Reichert v. Saremba.

JACOB REICHERT ET AL., APPELLANTS, V. AUGUST W. SAREMBA ET AL., APPELLEES.

FILED APRIL 12, 1927. No. 24747.

1. **Affirmance.** Cause heard *de novo,* and *held* that the decree of the district court was right.

2. **Religious Societies:** RIGHT OF PROPERTY: INTERFERENCE BY COURTS. Ordinarily, in case of a factional division in a church organization, the civil courts will not inquire into the ecclesiastical teachings of a pastor, or of a congregation holding church property, in order to determine which faction is entitled to the possession and use of church property.

3. ———: ———: ———: INJUNCTION. Where its deed to its church real estate, its articles of incorporation and its by-laws show that a church society is an independent, congregational body, save that the by-laws provide, in case of a division of the congregation or a dissolution of the corporation, that the property shall be disposed of in accordance with the instructions of the Evangelical Synod of North America, with which synod the congregation has affiliated, and where no petition or complaint has been presented to or acted upon by such synod, a decree of a district court of the Nebraska synod, acting upon the petition or complaint of a minority faction of the congregation made directly to said court, and not to the Evangelical Synod,

nor referred to the court by that synod, is ineffectual to bind the congregation and to oust the majority faction from possession of the church property. In a suit grounded on such facts, the civil courts will deny the minority an injunction against using the church property and will refuse to oust the majority therefrom.

APPEAL from the district court for Lancaster county: MASON WHEELER, JUDGE. Affirmed.

Boehmer & Boehmer, for appellants.

Wilmer B. Comstock and T. R. P. Stocker, contra.

Heard before GOSS, C. J., ROSE, DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ.

GOSS, C. J.

This is an appeal from a decree denying plaintiffs an injunction and dismissing their suit in which they sought possession of church property and other incidental relief. ,

The suit was brought by Jacob Reichert, George Groh, and John Klein, alleging that they are acting as trustees of St. John's Evangelical Church of Lincoln, Nebraska, and in their individual capacity as members of the congregation, against August W. Saremba, Peter Bitter, Henry Burbach, and Alex Bauer, claiming to be, respectively, the pastor and trustees of the church.

Ordinarily there is not much dispute about the law affecting church controversies that find their way into the civil courts. They depend more upon the facts of the particular case and the true interpretation thereof than upon the principles of law which are well settled and easily applied when the ultimate facts are determined. So we shall state at more than usual length the facts as shown by the record.

The church society was organized in 1907. As shown by its articles of incorporation, which were adopted at a meeting of the congregation on April 7, 1907, and later recorded, the corporate name in the German language, but translated for us, is the German Evangelical St. John's Church, but

Reichert v. Saremba.

no point is made in this suit as to the discrepancy between this and the name recited in the pleadings. Soon after the organization, the congregation acquired a lot, took title in the corporate name and erected a church. Here in the church, maintained by the original small congregation and by others joining them in increasing numbers, the congregation worshipped in peace until 1922, when their pastor resigned and the first named defendant was employed by the congregation to take his place. Upon application of the church to the Nebraska district officers of the Evangelical Synod, Rev. August W. Saremba had come and, after preaching a trial sermon, a contract of employment was entered into between him and the church. Soon thereafter dissension came. Two factions arose. Our decision does not require us to discuss the causes nor to fix the blame, but we deem it not improper to say that there is evidence of unyielding intolerance in both factions. Quite a number of members were expelled or dropped from the church membership by a two-thirds vote of the congregation (without allowing them to vote on the question of expulsion), a large proportion of them because, it was testified, they had ceased to pay their dues to the support of the church. Others, dissatisfied with the pastor and the action of the majority, withdrew from participation in the services held in the church.

The minority, represented here by the plaintiffs, and so described in their brief, holding meetings in a settlement house in North Lincoln, appealed to the synodical officers and to the Nebraska district synodical court for relief. A meeting of that court was held, witnesses presenting the views of both parties were examined, and the court, on March 26, 1924, entered its findings and decision and sent an official notice of the result thereof to the congregation, suspending the defendant Saremba, and discharging him from his position as pastor of the church, and warning the congregation that that part of it which does not heed the decision must suffer the consequences. He continued his office as pastor and the majority continued to hold the

church.    Later, at the next annual conference of the
churches comprising the Nebraska district of the synod, held
at Milford in the summer of 1924, when the majority fac-
tion, then and now holding possession of the church, sent a
delegate as its lay representative and the minority faction
sent the plaintiff Reichert as its representative, the con-
ference recognized Reichert as the true representative and
informed the other delegate that his faction was not con-
sidered a member of the synod.   Later, on notice to the ma-
jority faction, another session of the Nebraska district syn-
odical court was held in Lincoln, December 30, 1924.   The
court rendered a decision supplementing its former one of
March 26, and directed the majority faction to surrender
the church property to the recognized faction.   This order
was duly served; the trustees refused to give over the pos-
session of the keys and of the church property; and then
this suit was brought on behalf of the so-called minority
faction appealing to the civil and temporal courts to carry
out and enforce the decision of the church court.

A decision of the questions involved requires a statement
and analysis of the articles of incorporation and constitution
or by-laws of the church and of the statutes and by-laws
of the German Evangelical Synod of North America, as
well as an inquiry into the history of the dealings between
the two bodies.

The articles of incorporation of the church provide:

Article III.   "This corporation shall have the right to
own, hold and possess such real estate as may be necessary
for the furtherance of its objects and purposes as herein
stated,"

Article IV.   "The object and purpose of this society shall
be to hold and conduct divine services and teach the doctrine
as taught and propounded by the Evangelical Synod of
North America."

Article VI.   "This corporation shall begin on the 16th
day of April, 1907, and shall continue until it is dissolved ac-
cording to law or by unanimous vote of all the members
of this society.   The business affairs of this corporation

shall be conducted by a board of trustees (naming them and fixing their term) until the next annual meeting."

Article IX. "The property of this congregation is and shall always remain the undivided property of the congregation. In the event of a division of the congregation or a dissolution of the corporation, the property shall be disposed of in accordance with the instructions of the Evangelical Synod of North America and the decision of this synod with reference to the disposition of the property shall be considered final. And the property shall be disposed of in accordance with the decision of this synod and in no other manner."

The constitution, or by-laws, of the church provides:

Article IV. "Persons are received as members in the congregation at the next regular meeting of the congregation after their application has been approved by the officers by a two-third vote of the members present at such meeting."

Article V. "If a member does not perform his duties towards this congregation as provided in these by-laws, then the congregation shall determine whether poverty or negligence is the cause, and if the latter be the case, then such member may by a two-third affirmative vote be stricken from the list."

Article IX. "All important questions wherein the congregation is involved shall be decided by a two-third majority vote of the members, and such vote shall be taken by ballot or by roll call. For the election of officers at the annual meeting a simple majority of vote shall be sufficient."

Article XII. "If the choice of the pastor becomes necessary, then the trustees must apply to the president of the Nebraska district so that he can submit the name of a suitable man for the place, for whom a vote will then be taken. When this one has not been selected, some other person may be proposed. The pastor is chosen in a regular meeting by ballot for an indefinite time."

Article XIII. "The real estate is and shall forever remain

the indivisible property of the congregation. In case of a dissolution or division, the verdict of the Evangelical Synod of North America shall be obtained and shall be considered conclusive."

From the printed book in evidence as "Statutes and By-Laws of the German Evangelical Synod of North America," as bearing on the questions under consideration, we quote the following separate excerpts: "The qualified members of the German Evangelical Synod of North America shall be: Pastors, congregations, and teachers. Their rights and duties shall be stipulated in the by-laws." "A synodical congregation may have only such pastors to serve it as are either members of the synod or who are recommended by it. If a congregation continually act contrary to this rule, despite the admonition of its district, it shall be excluded from the synod." "Every affiliated member of the synod who lives within the territory of the district and the officers and boards of the district, as such, because of unlawful official conduct, are amenable to action by this court (the district synodical court). Actions before this court may be brought by any synodical member, by one or a number of persons who, being formerly affiliated with a synodical congregation, wish to bring a complaint charging unjust expulsion." "The penalty to be visited by the court upon a member of the synod against whom charges have been sustained shall be, according to the gravity of the offense, either: Judgment to pay a part or all of the court costs, reproof, suspension of rights as a member of the synod for a period of not more than two years, and expulsion from the synod."

The deed by which the church held title is not in evidence. From allusions to it in the testimony and arguments, it must have been, and we assume it was, a deed without any clauses in it fixing any express or specific trust in favor of the synod and binding the congregation. There could, therefore, be no implied trust in favor of the synod arising out of the deed itself, and, so, we must look elsewhere in the case than to the deed for the jurisdiction and the power of the synod

through its district court or otherwise to enter a decision and judgment as to the possession and control of the church property.

Of the articles of incorporation heretofore quoted, while article IX provides that, upon a division of the congregation or dissolution of the corporation, the property shall be disposed of in accordance with the instructions of the Evangelical Synod of North America and the decision of this synod shall be final, yet the natural, plain interpretation of those words, relating to a division of the congregation, means that, where an amicable division of the congregation occurs, then the matter of a disposition shall be referred to the evangelical synod, as a referee agreed upon in advance, to be determined finally by this general synod, and no other. It cannot be interpreted to mean that by this article the corporation intended to abdicate its right to expel members by a two-thirds vote, and that then, before their expulsion was set aside, these expelled members could claim that there was a division of the congregation and, therefore, ask for a division of the property. Until reinstated as members of the congregation, there would be no jurisdiction of the synod over them to empower it to give them property, or a share of property, belonging to a congregation, or its members. The article cannot be understood to mean that a subordinate branch of the evangelical synod can make a disposition of the church property where, as in this case, application was made by the minority faction directly to the district synod, rather than to the evangelical synod itself, and where there was no delegation or reference of the matter by the general synod to the court to hear and determine the matter and report to it. We do not wish to be understood as saying that the district synodical court did not have jurisdiction to hear and determine the complaint of expelled members as to the validity of their expulsion and other grievances not specifically related to a division of the property. What we are considering is the right to the possession of the church property and the power of a subordinate church court to order the disposition and use of it in the light of the record in this case.

Articles IV of the constitution or by-laws, made pursuant to the articles of incorporation, provides for the reception of members, article V for the expelling of members for cause, and article IX for the determination of all important questions in which the congregation is involved, in each of which. instances the articles specifically provide· for a two-thirds vote of the congregation.

A careful study of the articles of incorporation and of the constitution or by-laws convinces us that it was the intent of the members of the congregation, and that these instruments may be fairly construed to indicate, that the church was a congregational and independent body chartered by the state· to govern itself and to be self-contained, save as it may have surrendered or modified any of its charter rights by its affiliation with the synod.

When we study the statutes and by-laws of the Evangelical Synod of North America, we find that a mere member of a church is not a member of the synod; that the synod has only three classes of members, namely, pastors, congregations, and teachers, and that, therefore, members of a local ·society are not members of the synod; that a synodical congregation, which is the type of membership held by the German Evangelical St. John's Church of Lincoln, may have only such pastors to serve it as are either members of the synod, or are recommended by· it; and that the extreme penalty for the continual infraction of the rules of the synod by a congregation, as a member, is that it shall be excluded from the synod. We find nothing there and counsel have called our attention to nothing there specifically giving the evangelical synod control over the property of its members.

Nowhere in the record do we find anything to indicate that the congregation surrendered any of its rights to control its church property as a separate, independent, congregational body, save as heretofore indicated. When such surrender or reference, or cession, or grant of right to the general synod was acted upon or exercised, it must have

been done by the synod upon a petition or complaint made by the parties capable of making it.

Ordinarily, in case of a factional schism in a church organization, the civil courts will not inquire into the ecclesiastical teachings of a pastor, or of a congregation holding church property, in order to determine which faction is entitled to possession and the use of church property. *Kenesaw Free Baptist Church v. Lattimer,* 103 Neb. 755; 8 A. L. R. (Annotation) 105; *Wehmer v. Fokenga,* 57 Neb. 510.

We do not wish to be understood as saying that in no circumstances will the civil courts inquire into such matters, but, in the instant case, the constitution of the church having granted to the synod no control over the church property except, perhaps, in case of a dissolution or division, and the synod, as such, 'never having acted on any petition or complaint of the church or of any of its members, we cannot consider ecclesiastical or any other differences and thereby change the present possession of the church property.

On the record presented for review, the plaintiffs were, not entitled to a decree ousting the majority from possession of the church property. The decree of the trial court was right and it is

AFFIRMED.