PROTESTANT REFORMED CHURCH OF EDGERTON v.
JOHN TEMPELMAN AND OTHERS.

81 N. W. (2d) 839.

March 8, 1957—No. 36,929.

184

*Harry H. Peterson* and *Benjamin Vander Kooi,* for appellant.

*L. M. Himmelman,* for respondents.

NELSON, JUSTICE.

This is an appeal from an order denying plaintiff's motion for amended findings or for a new trial.

The Protestant Reformed Church of Edgerton, Minnesota, the plaintiff here, is a religious corporation affiliated with the Protestant Reformed Church of America. It was organized April 8, 1939, under Mason St. 1927, §§ 7985 and 7986. The Protestant Reformed Churches of America are presbyterial in the form of their church government, and the membership of the said Edgerton church is bound by the discipline, usages, orders, and regulations of the judicatories of the Protestant Reformed Church of America.

The church government of the parent denomination provides for four levels of self-government within its judicatory setup, i. e., the consistory, the classis, the particular synod, and the general synod. So far as the record in this case discloses, it does not appear that a particular synod has been set up to operate above each classis before reaching the general synod, and therefore we are here concerned only with the consistory, the classis, and the general synod operating as the court of last resort within the church judicatory.

Article 3 of the Articles of Incorporation of the plaintiff church provides that its members shall labor together according to the discipline, rules, and usages of the general denomination of the Protestant Reformed Church, as from time to time authorized and declared by the classis or synod of said church denomination.

The consistory generally is composed of elders and deacons of the particular church, and in the plaintiff church, constituted seven in number. The individual churches select delegates who comprise the classis. Each classis selects delegates who comprise the general synod. Here we are therefore concerned with three governing levels, the consistory, the classis, and the general synod to which either classis can appeal directly. The denomination is divided into Classis East and Classis West and the dividing line is the Mississippi River.

The defendants are members of the congregation of plaintiff church and residents of the State of Minnesota.

The basis of the dispute here involved lies in the deposition of Rev. DeWolf of the First Protestant Reformed Church of Grand Rapids, Michigan, by Classis East. Differences in doctrinal interpretation, followed by disputes over the validity of the DeWolf deposition procedure, caused dissension among the members of the Edgerton church as well as other churches in Classis West.

On August 31, 1953, the Edgerton church consistory adopted a resolution stating that it did not recognize the deposition of Rev. DeWolf. This resolution carried by a vote of four to three. On September 2, 1953, Classis West adopted a similar resolution at its regular meeting held at Oskaloosa, Iowa. Classis East had approved the Rev. DeWolf deposition.

The matter was never effectively discussed or decided by the general synod, the high judicatory of the denomination and the final authority as to both Classis East and Classis West. The general synod which duly and regularly met in June 1953 appeared to have thought the issue too important to be fully weighed, treated, and disposed of at that session without further study. Consequently the matter was set over for further hearing at a regularly appointed adjourned meeting ordered to be held in March 1954 at the Fuller Avenue Church (First Protestant Reformed Church of Grand Rapids, Michigan). By that time Classis West had by its resolution taken a position opposite from that taken by Classis East. The study committee of the general synod had been scheduled to report on this matter at the adjourned meeting. When the adjourned meeting met (composed of representatives of both classes) in March 1954, the synodical delegates of Classis East met at a different church than that selected by the regular synod which had met in June 1953. Because of the division which had developed, no unified action was taken on the problem at the adjourned meeting by the duly constituted general synod.

Going back to the occurrences within the plaintiff church, we find that on September 11, 1953, the three members of the Edgerton consistory that voted to approve the deposition of Rev. DeWolf, even though the duly constituted Classis West had ruled otherwise, circulated a letter addressed to the members of the Edgerton congregation stating that Classis West had acted illegally in failing to recognize the deposition of Rev. DeWolf; that the majority of the church consistory had also acted illegally; and that such action rendered the majority of the consistory guilty of schism. Schism has been defined in ecclesiastical circles as a formal division within or separation from a church or religious body, on account of some doctrinal difference of opinion with regard to matters of faith or discipline or the offense of causing or seeking to cause such a division.[1]

---

[1] Nelson v. Benson, 69 Ill. 27; see, Webster's New International Dictionary (2 ed.) (1947) p. 2234.

On September 17, 1953, the three dissenting members of the consistory met, claiming to act as the legal consistory of the plaintiff church, with the consistory of the Protestant Reformed Church of Doon, Iowa, and this collective body then took it upon themselves to depose the majority of the Edgerton consistory. In these proceedings, the three dissident members presumed to act under authority of article 79 of the governing church orders. This article provides:

"When ministers of the Divine Word, elders or deacons, have committed any public, gross sin, which is a disgrace to the church, or worthy of punishment by the authorities, the elders and deacons shall immediately by preceding sentence of the consistory thereof and of the nearest church, be suspended or expelled from their office, but the ministers shall only be suspended. Whether these shall be entirely deposed from office, shall be subject to the judgment of the classis, with the advice of the delegates of the (particular) synod mentioned in Article 11."

The attempted deposition of the defendants, the majority members of the consistory of the Edgerton church, was taken by the three dissident members without any of the defendants being present and without their being notified of any action or hearing being contemplated and without the knowledge of any of the defendants of said meeting.

Let it be understood at this point that the consistory of plaintiff church was governed at the time by the discipline, rules, and usages of the Protestant Reformed Church of America and that this consistory of seven members was the governing body of the church corporation and had charge of the temporalities of said church, including building, records, and personal property.

On April 3, 1954, the three dissenting members of the consistory, declaring themselves to be the true consistory of the plaintiff church, commenced this action against the defendants to have them enjoined from representing themselves to be elders and deacons of the Edgerton church as well as its legally constituted consistory and to compel them to turn over to plaintiff full charge of the temporalities of said church, including the buildings, records, and personal property.

In addition thereto plaintiff, by and through the efforts of the three dissident members, sought to recover a money judgment for damages which they claim plaintiff had sustained.

■ It is well-settled law in this state, as well as in other jurisdictions, that problems of church doctrine, or any problem growing therefrom implying a religious conflict, shall be settled by and within the judicial organs of the church body and in the present conflict according to the usages, orders, and regulations of the Protestant Reformed Church of America.

■ The civil courts should not and cannot enter into any dispute relative to doctrinal matters arising within a church organization nor can they interfere with or enter into any dispute relative to church government. It is a well-recognized rule binding upon the civil courts that, where a church congregation is divided, the group which has proceeded in accordance with the rules of its church government must be recognized as the group entitled to control of the physical property of any church belonging to that certain denomination. It is a corollary of this rule that the aggrieved parties in a church congregation must exhaust their remedies within the church judicatories of that organization before seeking relief in the civil courts.

In essence the issue presented on this appeal is whether the three minority members proceeding in the name of the plaintiff, or the four defendants, whoever may be charged with that duty, have exhausted the remedies which ought to be pursued and are obtainable if pursued through the church judicatories. The constitution of the plaintiff church organization provides for appeal by aggrieved parties to the higher church orders. Under that constitution, an aggrieved party at the consistory level would have an appeal to its classis. Should the decision there be unfavorable, it could then appeal to the synod. However, in this case, since a particular synod does not appear to have been set up, the appeal from the classis would be to the general synod, the highest church judicatory. Until such course has been taken by appeal in connection with any dispute relative to any doctrinal differences or disputes within the church organization,

and within the jurisdiction of the church orders, an action in the civil courts would not be warranted. Therefore, the main question which presents itself, in this case, is limited to the proposition whether the minority members supporting plaintiff, or the four defendants, were originally required to appeal to a higher church order under the rules imposed by its discipline, usages, and orders. Article 31 of the church orders provides:

"If anyone complain that he has been wronged by the decision of a minor assembly, he shall have the right to appeal to a major ecclesiastical assembly, and whatever may be agreed upon by a majority vote shall be considered settled and binding, unless it be proved to conflict with the Word of God or with the articles of the church order, as long as they are not changed by a general synod."

■ The record in the instant case fails to disclose any decision issued by Classis West or a duly constituted general synod deposing the defendants as majority members of the plaintiff church consistory based upon proof that their activities and conduct within the church consistory conflict with the word of God or the articles of the church order.

Since this matter has been taken before the civil courts for determination, the aforesaid position and state of the doctrinal dispute within the forum provided by the church judicatories may be taken into account in determining contract and property rights respecting the holding, control, and use or enjoyment of the church property as between the contending parties to the present action.

■ This court in one of the early church cases which came before it, namely, East Norway Lake Church v. Halvorson, 42 Minn. 503, 44 N. W. 663, clearly set out the distinction between the jurisdiction of a civil court and the conclusiveness of the decision of an ecclesiastical tribunal, pointing out that civil courts in this country have no ecclesiastical jurisdiction and therefore they do not take cognizance of a schism or division within a religious organization unless some property or civil right is involved. This approach gives rise to the rule that so long as the effects of the schism or division within the church body are confined to spiritual, religious, ecclesi-

astical, or theological matters it furnishes no basis for interference by the civil courts at all however vitally it may affect the interests of the society as an ecclesiastical or spiritual body. The civil courts recognize that within those domains the ecclesiastical authority is paramount and its sanctions exclusive, and they may not intrude therein either for the purpose of enforcing or resisting obedience to ecclesiastical canons or decrees. It is therefore only when a civil or property right is involved of which the civil court may take jurisdiction that a civil court has any occasion at all to pass upon the conclusiveness or effect of a decision of the ecclestistical tribunal.[2]

The position of the civil courts relative to doctrinal church disputes was clearly enunciated in Watson v. Garvin, 54 Mo. 353, 378, frequently referred to in cases affecting church organizations, wherein the court in its opinion said:

"The true ground why civil courts do not interfere with the decrees of ecclesiastical courts, where no property rights are involved, is not because such decrees are final and conclusive, but because they have no jurisdiction whatever in such matters, and cannot take cognizance of them at all, whether they have been adjudicated or not by those tribunals."

Those general propositions have been sustained and adhered to in the leading cases involving church matters throughout the country. This court has made it clear beginning with the East Norway Lake Church case, *supra,* and others involving church disputes since that time that civil courts take up matters of religious doctrine with extreme reluctance and that they never do so—it is beyond their province to do so—for the purpose of determining the abstract truth or falsity of any religious doctrine, and the civil courts never consider them at all except where civil rights, rights of property or con-

---

[2]See, case note—Litigation growing out of schism or division in religious society, 24 L.R.A.(N.S.) 692 to 693; also, see, Annotations, 8 A. L. R. 105 to 133, and 70 A. L. R. 75 to 90. Cases are referred to in these annotations where a schism or division has arisen within independent religious societies as a result of which the title to, or control of, the property of the society has become involved in litigation in the civil courts.

tract, respecting the holding, control, use, or enjoyment of property are dependent on them. If by contract the right to hold, control, use, or enjoy property depends upon adherence to, or teaching of, a religious doctrine, the civil courts will examine what, as a matter of fact, the doctrine is, and whether, as a matter of fact, this or that person adheres to or teaches it. But they will go no further than is found necessary to determine the question of fact. The proposition that the civil courts will make such examination, as a matter of fact, must be understood in connection with another proposition which is that where the contract provides, or by implication contemplates, that the question what is according to, and consistent with, the particular doctrine or doctrines shall be determined by some church judicatory, the determination of such judicatory, duly made when the matter is properly brought before it, will be conclusive upon the civil courts. The civil courts have held this to be true rule not because the law recognizes any authority in such bodies to make any decision touching civil rights but because the parties, by their contract, have made the right of property to depend on adherence to, or teaching of, the particular doctrines as they may be defined by such church orders. In other words, the members of the church body and the church denomination have made its judicatories the arbiter upon any and all questions that may arise as to what the doctrines are and as to what is according to them.

■ Where a number of persons associate together to form a religious congregation and incorporate for the more convenient holding and control of property acquired for its use, the constitution or body of rules which they adopt to prescribe who shall be members of the corporation and entitled to share in the control of it is the contract by which they are bound. That right to share in the government of a corporation is a civil right which the law will protect, and the court will therefore determine who are the members of the corporation.

We think it therefore clearly the rule that the church has no control over any civil right or duty; while on the other hand the civil power has no authority to secularize the church or to interfere with the exercise of its constitutional ecclesiastical jurisdiction.

The church alone has jurisdiction of communion, faith, or discipline and the members must submit to such rules and regulations governing these matters as may be prescribed by the church government, but the church does not always have exclusive jurisdiction over property or personal liberty or over any right which it is the duty of the civil power to protect.

In determining property rights under such circumstances, the civil courts must take into consideration the organization as well as the government of the church, and restrictions in the title to the property, to determine where the rights of property lie. These principles are always applicable whether the society involved is independent in government or is but a part of a general ecclesiastical body. It is therefore only when civil or property rights of a religious organization form the basis of the relief sought that a civil court can inquire into the ecclesiastical beliefs peculiar to the organization. Since the separation of church and state is firmly established in this country and there is a constitutional guarantee of freedom of religious profession and worship, civil courts are not therefore concerned with controversies or questions of a purely ecclesiastical nature, and this rule has been generally adhered to, the civil courts declining to intervene except where there has arisen out of such church doctrinal controversy or division an invasion or violation of the civil rights of the members.[3]

■ The courts have also held that, ordinarily, in case of factional disputes in church organizations, the civil courts will not inquire into the ecclesiastical teachings of a pastor, or of a congregation holding church property, in order to determine which faction is entitled to the possession and use of church property. Reichert v. Saremba, 115 Neb. 404, 213 N. W. 584.

■ It is the law of all corporations that a mere majority of its members cannot divert the corporate property to uses foreign to the purposes for which the corporation was formed, and there is no difference between church and other corporations in this regard.

[3]Thomas v. Lewis, 224 Ky. 307, 6 S. W. (2d) 255; Woodrum v. Burton, 88 W. Va. 322, 107 S. E. 102; Clapp v. Krug, 232 Ky. 303, 22 S. W. (2d) 1025; Cape v. Moore, 122 Okl. 229, 253 P. 506.

If and when a church corporation is formed for the purpose of promoting certain defined doctrines of religious faith, which are set forth in its articles of incorporation, any church property which it acquires is impressed with a trust to carry out such purpose, and a majority of the congregation cannot divert the property to other inconsistent religious uses against the protest of a minority, however small. However, the manner of the use of the property of the church corporation, within the range of its corporate powers, may be determined by the majority of the congregation, but no majority, even though it embrace all members but one, can use the corporate property for the advancement of a faith antagonistic to that for which the church was established and the corporation formed.[4]

For other Minnesota case law involving disputes within church organizations and the matter of jurisdiction of the courts in church disputes, see Blauert v. Schupmann, 241 Minn. 428, 63 N. W. (2d) 578; Trinity Church v. First Spiritualist Church, 221 Minn. 15, 20 N. W. (2d) 534, 21 N. W. (2d) 611; Russian-Serbian Holy Trinity Church v. Kulik, 202 Minn. 560, 279 N. W. 364; Rock Dell Norwegian Ev. Luth. Congregation v. Mommsen, 174 Minn. 207, 219 N. W. 88; Lindstrom v. Tell, 131 Minn. 203, 154 N. W. 969; Schradi v. Dornfeld, 52 Minn. 465, 55 N. W. 49.

■ We may properly conclude at this point that the Church Order of the plaintiff church is the constitution to which the members had subscribed and which this court is bound to recognize as controlling upon the issues in the action before the court between the two factions.

■ This court cannot determine whether the consistory of plaintiff church, a corporation organized under the laws of the State of Minnesota, has departed from the doctrinal practices of the church,

---

[4]Cases involving similar church conflicts have appeared in the Michigan courts. First Protestant Reformed Church v. DeWolf, 344 Mich. 624, 75 N. W. (2d) 19. This was a case which arose over the original deposition of Rev. DeWolf. Also, see, Borgman v. Bultema, 213 Mich. 684, 182 N. W. 91; Fuchs v. Meisel, 102 Mich. 357, 60 N. W. 773, 32 L. R. A. 92; Mount Olive Primitive Baptist Church v. Patrick, 252 Ala. 672, 42 So. (2d) 617, 20 A. L. R. (2d) 417; Watson v. Jones, 80 U. S. (13 Wall.) 679, 20 L. ed. 666.

194

since a civil court may not substitute its opinion for that of the authorized tribunals of the church in ecclesiastical matters. Since the Church Order of the plaintiff church is the supreme law and constitution of the church and the sole and exclusive authority to settle questions as to who adheres to the confession of faith and to decide what the confession of faith of the church is or shall be, it is the duty of the aggrieved party, or parties, to proceed by appeal according to the discipline, usages, and orders of the church. We conclude, however, upon the record before us, that the aggrieved parties, whose first duty it was to appeal to a higher church order, were in this case the three minority members who commenced the within action in the name of the plaintiff church corporation against the defendants.

Since the duly constituted general synod of the Protestant Reformed Church of America is the proper final body to hear, try, and determine whether the action of a minister and his followers is heretical and in conflict with the confession of the church, its decision would be, in all ecclesiastical matters, final and binding on the court herein if an appeal had been taken to it by the aggrieved party or parties from the resolution adopted by a majority of the consistory. However, no appeal has been taken from the decision made by the consistory of the plaintiff church on August 31, 1953, nor from a similar decision made by Classis West on September 2, 1953. The proper procedure, under democratic processes consistent with the constitutional principles of our country, must be followed by the membership of the plaintiff church organization, and it is the duty of the aggrieved members to proceed step by step from the consistory through the Classis West and on to the church court of last resort, the general synod. None of these requirements have been complied with. This court will not attempt to determine the church dispute here involved, but it will upon the record before it concern itself with the property rights of the membership of the plaintiff church if and when the occasion arises. The presbyterial form of government, such as the church of the Protestant Reformed Church of America has, ordinarily requires, as does any democracy, even

though ecclesiastic in its nature, that the minority submit to the will of the majority.

Upon the present state of the record the trial court made findings of fact and thereupon concluded that the defendants, who had the majority vote upon the resolution passed August 31, 1953, in the consistory of the plaintiff church, constitute the regular consistory of that church and as such entitled to the control of the plaintiff church properties. We agree with the facts found and the legal conclusions reached by the trial court, which in effect are that the action taken by the minority members of the consistory of the plaintiff Edgerton church in their attempt to depose the majority thereof was not, in the manner taken, binding upon the defendants, and therefore void and of no determinative legal effect. So long as the minority members of that consistory separate themselves from the church and refuse to avail themselves of the right to appeal in the manner provided to a higher church judicatory they have no basis upon which to predicate relief in a civil court, since the doctrinal church conflict in which they are involved constitutes the basis of their complaint and the civil courts are without jurisdiction to determine such doctrinal matters. Therefore, no present grounds exist for disturbing the present control of the plaintiff church property. It must be left, as it has been found, under the control of the defendants which constitute the majority of the consistory members and, so far as the record in the instant case discloses, the present legal consistory of the plaintiff church congregation.

Affirmed.