# HERMAN VELTMAN AND OTHERS v. PETER DeBOER AND OTHERS.

118 N. W. (2d) 808.

December 7, 1962—No. 38,608.

*Benjamin Vander Kooi,* for appellants.
*L. M. Himmelman,* for respondents.

MURPHY, JUSTICE.

Plaintiffs bring this appeal from an order of the district court denying their alternative motion for amended findings of fact and conclusions of law or a new trial. They also appeal from an order of the trial court denying their subsequent motion for a new trial on the ground of newly discovered evidence.

This case is a sequel to Protestant Reformed Church v. Tempelman, 249 Minn. 182, 81 N. W. (2d) 839, which involved an action by three members of the local consistory of the Protestant Reformed Church of Edgerton against a majority of four members arising out of a doctrinal dispute. In that action the minority group, who are plaintiffs and appellants in this case, sought to enjoin the majority from holding themselves out as the governing body of the church and to require them to turn the church property over to the minority. We there denied the relief sought, holding that the three dissenting members, who attempted to declare themselves the true consistory of the church and to depose the majority, were premature in their action and would be required to pursue appeals to higher church orders before commencing the action.

By their complaint in this case the minority group alleges that the majority wrongfully withholds possession of the church property; that they have elected to affiliate with the Christian Reformed Church, a faith and order contrary to the Protestant Reformed Church; and that the majority now proposes to sell the church property. The minority asks that the defendants be restrained from holding themselves out as elders and deacons of the Protestant Reformed Church of Edgerton and that they be enjoined from executing deed of conveyance to the church property.

The answer denies that the plaintiffs are members in good standing of the Protestant Reformed Church of Edgerton and alleges that they have withdrawn and seceded from that church and have organ-

ized themselves into a separate and independent religious group, and that they are "total strangers to this action with no right of action whatever."

The difficulties which gave rise to this and other litigation involving the Protestant Reformed Church of America grew out of a doctrinal dispute between Rev. Hubert DeWolf and Rev. H. H. Hoeksema, two ministers of the church. The history and circumstances of the dispute, which has divided the Protestant Reformed Church of America into two or more factions, are discussed in various court decisions, including First Protestant Reformed Church v. DeWolf, 344 Mich. 624, 75 N. W. (2d) 19, and First Protestant Reformed Church v. DeWolf, 358 Mich. 489, 100 N. W. (2d) 254, as well as the Tempelman case. The plaintiff-appellants, who represent the minority members of the consistory of the Edgerton church, adhere to the doctrinal beliefs held by Rev. Hoeksema. The defendant-respondents, who represent the majority of the consistory, have adhered to the doctrinal beliefs of Rev. DeWolf. In the interest of clarity the parties will be referred to as the DeWolf and Hoeksema factions.

The hierarchy of the church, as established and existing in 1953 when the Tempelman case arose, consisted of three levels of ruling bodies which were authorized to deal with ecclesiastical matters. In ascending authority they were the consistory, which is comprised of the deacons and elders of the local church; the classis, which is composed of delegates from the various consistories; and the synod, which is comprised of delegates from the classis. The classis was divided into two bodies—Classis East, which was comprised of delegates from the consistories of churches located east of the Mississippi River, and Classis West, which was comprised of delegates from consistories of churches located west of the Mississippi River.

It appears that article 31 of the Church Order of the Protestant Reformed Church of America provides:

"If anyone complain that he has been wronged by the decision of a minor assembly, he shall have the right to appeal to a major ecclesiastical assembly, and whatever may be agreed upon by a majority vote shall be considered settled and binding, unless it be proved to conflict

with the Word of God or with the articles of the church order, as long as they are not changed by a general synod."

This article comprehends that parties aggrieved by a decision of the consistory may appeal to the classis and then to the general synod. We gather from the record that the schism left the Protestant Reformed Church of America divided, as a result of which its established hierarchal authority disintegrated and each group set up its own juridical structure.

By the findings the trial court determined that the Hoeksema group in September 1953 employed a new minister and began holding services in a separate hall, apart from the Edgerton church property. It was further found that the DeWolf faction, which remained in possession of the property, was unable to support the church and that since December 1958 religious services on the church property have been suspended. The findings recite that the DeWolf faction has now decided to disband and join the Christian Reformed Church. This faction proposes to sell the church property to the Presbyterian Church of Edgerton and, as the findings indicate, intends to turn the money over to "the general Synod of the Protestant Reformed Church of America" and "said proposal has been approved by Classis West and the general Synod." The trial court held that the DeWolf faction not only had the right to control of the property of the Edgerton church but that it further had "the right to sell it if they see fit; that plaintiffs [the Hoeksema group] have no actionable interest in said property."

From the confused record three significant events appear to have occurred since our decision in the Tempelman case. The first, of course, is the decision of the DeWolf group to sell the church property to the Presbyterian Church of Edgerton for $32,500. The second is the action of the DeWolf faction in appealing to a so-called synod, the membership of which is composed of its own adherents. This body, convened at Grand Rapids, Michigan, waived action by the classis, and considered the application of the Edgerton consistory. In June 1959 an "advice" was published stating "that Synod express that Edgerton has the right to acquire, control and dispose of any or all of its

property as it deems fit." A suggested amendment specifying that this right to deal with property was subject to the provisions of the articles of incorporation was defeated, and nothing was said as to what should be done with the proceeds of the sale. The third event relates to action by the minority or so-called Hoeksema faction. It appears that that group convened a classis composed of its own adherents at Doon, Iowa, on September 20, 1961. That body issued "advice" determining that the Hoeksema group and their successors in office constitute the regular consistory of the Edgerton Protestant Reformed Church. This decision was confirmed by action of a synod composed of Hoeksema adherents meeting at Grand Rapids, Michigan, on June 18, 1962. Obviously, neither faction recognizes the authority of the other.

The trial court apparently assumed that the DeWolf group, being a majority of the consistory in control of the property, was permitted to act upon the proposed sale pursuant to sanction by the particular hierarchal authority which it recognized. The trial court briefly disposed of the claims of the Hoeksema group by finding that they had forfeited their membership in the church and had "no actionable interest in said property." We are unable to satisfy ourselves that the facts contained in the record substantiate the findings and conclusions of the trial court. We cannot agree that the record establishes that the members of the Hoeksema group have forfeited their membership and are therefore denied a voice in the affairs of the local church. Moreover, we are unable to find from the record that the synod created by the DeWolf faction represents the Protestant Reformed Church of America, nor can we identify from the record the particular church body which will receive the proceeds of the proposed sale.

1.  In discussing the principles of law applicable to disputes within a religious society, we noted in the Tempelman case that civil courts are reluctant to concern themselves with the determination of the abstract truth or falsity of any religious doctrine. We pointed out, however, that we would upon the record presented concern ourselves with the property rights of the membership "if and when the occasion arises." Protestant Reformed Church v. Tempelman, 249 Minn. 182, 194, 81 N. W. (2d) 839, 849. As we view the basic issue in this case, the question is not whether the majority of the consistory has a right

to control the use of the church property but whether they may divert this property from the uses prescribed by the articles of incorporation and sell it to a foreign denomination, an issue not presented in the Tempelman case. In considering the authority of the consistory to execute a deed of conveyance of the property in question, the articles of incorporation cannot be ignored. The consistory derives its right to enter into the sale and transfer of the property from that document. In Lindstrom v. Tell, 131 Minn. 203, 207, 154 N. W. 969, 971, we said:

"* * * The church corporation was formed for certain well defined purposes, and the church property it acquired was devoted to those corporate purposes. It is the law of all corporations, that a mere majority of its members cannot divert the corporate property to uses foreign to the purposes for which the corporation was formed. There is no difference between church and other corporations in this regard. Where a church corporation is formed for the purpose of promoting certain defined [doctrines] of religious faith, which are set forth in its articles of incorporation, any church property which it acquires is impressed with a trust to carry out such purpose, and a majority of the congregation cannot divert the property to other inconsistent religious uses against the protest of a minority, however small. The manner of use of the property of the church corporation, within the range of its corporate powers, may be determined by the majority of the congregation, but no majority, even though it embrace all members but one, can use the corporate property for the advancement of a faith antagonistic to that for which the church was established and the corporation formed."

The articles of incorporation of the Protestant Reformed Church of Edgerton provides the basic body of its religious beliefs.[1] It fur-

---

[1]Article 2 of the articles of incorporation provides: "The object of this corporation shall be the promotion of the Christian Religion according to the uses and tenets of the Protestant Reformed Church of America. We recognize, as the fundamental principles of this church corporation, in Doctrine and Government, the Bible as the infallible Word of God, and as founded thereon the Formulas of Unity, being the 37 Articles of the Belgic

ther provides that all of the real and personal estate of the church is irrevocably appropriated to the maintenance of the unity, order, and government of the church.[2] The articles specifically require that before real estate belonging to the church may be sold notice must be given and approval granted by a two-thirds vote of the members present and entitled to vote.[3]

2. We cannot agree with the conclusion of the trial court that by worshipping in a different building the members of the Hoeksema

---

Confession of Faith, the Heidelberg Catechism, and the five (5) Articles against the Remonstrants, and the Church Order of Dordt (1618-1619) (the 1914 edition)."

Article 3 sets forth requirements for membership.

[2]Article 4 provides: "We irrevocably appropriate to the maintenance of the above mentioned Unity and Church Order and Government forever such real and personal estate as this Church now has, or may hereafter acquire, and declare that to these objects alone it shall be applied. In case of any departure from the above established Standards of Doctrine and Government by any portion of the church or congregation such estate shall be held and enjoyed exclusively by those who adhere to said Standards and Government herein declared and established as the basis of our church and congregation, and applied for the above named objects."

[3]Article 10 provides: "All conveyances of real property of this corporation shall be taken in the corporate name. All instruments or conveyances by the said corporation shall be signed by the President and attested by the Secretary for and in behalf of said corporation. The Consistory as a Board of Trustees shall have the power and authority to bargain, sell, convey, mortgage, lease or release any real estate belonging to said church, or held by them as trustees of same, and to erect churches, parsonages, schoolhouses and other buildings for the direct and legitimate use of said church, and to alter and repair the same, and to fix the salary of its minister, or anyone in its employ; provided that no such purchase, sale or conveyance, mortgage, lease or fixing of salaries shall be made unless the affirmative two-thirds vote of the members of this church corporation present and entitled to vote shall be first obtained at a meeting of the members of this church duly and especially called for that purpose by giving notice for four successive Sundays immediately prior to said meeting; provided further that no sale, mortgage or conveyance shall be made of any gift, grant, or donation, devise, or bequest which would be inconsistent with the express terms or the plain intent of same."

group forfeited their membership in the church so as to deprive them of a voice in the decision as to whether the church property shall be sold as the DeWolf faction proposes. Whether members secede from a religious society is a mixed question of law and fact to be decided with a view to all the circumstances, including the acts of the parties and their motives. Lost River Norwegian Ev. Lutheran Congregation v. Thoen, 149 Minn. 379, 383, 183 N. W. 954, 955. The record does not show that the Hoeksema group, in determining to worship apart from the DeWolf faction, departed from the practices and observance of church doctrine as established by orders of the church and its articles of incorporation. They called as their clergyman a duly ordained minister of the Protestant Reformed Church of America who was educated in a theological seminary of that denomination. The record indicates that they continued to teach and worship according to the usages of that church. Moreover, it seems to us that the DeWolf faction has a doubtful right to challenge the membership status of the Hoeksema followers. Since December 1958 they have discontinued use of the property for purposes of practicing their religion, and they now openly express the intention of embracing the doctrines and principles of a different religious society. While it is not necessary for us to pass upon the issue, it may well be argued that they have themselves seceded from the church to the beliefs and doctrines of which the property was dedicated.

3. Where, as here, a congregation in its constitution adopts certain books as the exponents of its doctrine and an honest difference of opinion exists as to the interpretation of the statements of doctrine in such books, and the constitution is silent as to such matter of interpretation and provides no method for determination of differences, civil courts will not hold that adherence to either interpretation results in the forfeiture of a member's connection with the congregation so that he ceases to be a member of the corporation it has formed to hold and control its property. Trustees of East Norway Lake Norwegian Ev. Lutheran Church v. Halvorson, 42 Minn. 503, 44 N. W. 663; Trustees of German Ev. Society v. Henschell, 48 Minn. 494, 51 N. W. 477; see, Lindstrom v. Tell, 131 Minn. 203, 154 N. W. 969; Peterson v. Samuelson, 42 Neb. 161, 60 N. W. 347; West Koshkonong Congre-

gation v. Ottesen, 80 Wis. 62, 49 N. W. 24. So far as the record here establishes, the action of the Hoeksema group constituted a division or separation within the church rather than a secession from it. West Koshkonong Congregation v. Ottesen, *supra*; Holm v. Holm, 81 Wis. 374, 51 N. W. 579; Schradi v. Dornfeld, 52 Minn. 465, 55 N. W. 49.

It is obvious that under the provisions of the articles of incorporation no transfer of church property may be made without notice to the membership and an opportunity for them to be heard. Since we are not satisfied that the record supports the finding of the trial court that the Hoeksema followers are no longer members of the church, the case must be returned for a new trial so that the issue of membership may be determined.

Reversed.

OTIS, JUSTICE (concurring specially).

I would remand with directions to conduct whatever proceedings are necessary to comply with our decision but without requiring a new trial on issues already litigated.

ROGOSHESKE, JUSTICE (concurring specially).
I join with Mr. Justice Otis.