**Voya PILETICH, et al., Appellants,**

v.

**George DERETICH, et al., Respondents.**

**No. 81–1247.**

Supreme Court of Minnesota.

Dec. 30, 1982.

Rehearing Denied Feb. 14, 1983.

---

James W. Hunter, Minneapolis, J. Patrick Leavitt and Michael J. McDonald, Shakopee, for appellants.

Grannis, Grannis, Campbell & Farrell, Roger N. Knutson and Thomas M. Scott, South St. Paul, for respondents.

AMDAHL, Chief Justice.

This action concerns a dispute over the identity of persons entitled to the real and personal property held in the name of the Serbian Eastern Orthodox Church of St. Sava, in South St. Paul. A schism occurred in this church in 1963, and respondents, currently officers or trustees of St. Sava, represent the majority of the congregation at the time of the split. The majority faction acquired custody and control of the property in question and continues in possession and control. Appellants, the minority faction, are four individuals, three of whom were neither original parties to this lawsuit nor members of St. Sava at any time.

The Serbian Eastern Orthodox Church of St. Sava became incorporated in 1950. In 1951, the congregation purchased a parcel of real property on which they erected a church and other buildings. An adjacent parcel acquired in 1958 has been used as a residence for St. Sava's priest. Title to both parcels is in the name of the local church and both parcels are subjects of this dispute.

The controversy results from a split which occurred in 1963 between the Serbian Eastern Orthodox Church headquartered in Belgrade, Yugoslavia (Mother Church) and the Serbian Eastern Orthodox Diocese for the United States and Canada (American Diocese). During a protracted dispute over control of this diocese, the Mother Church suspended and then defrocked Bishop Dionisije Milivojevich and appointed another in his place. The Mother Church also reorganized the diocese into three dioceses, the Middle Western, Western, and Eastern. Milivojevich filed suit in Illinois seeking to have himself declared the true Bishop. The United States Supreme Court ultimately ruled that the Illinois Supreme Court, by holding that the removal was arbitrary and not in accordance with the church's constitution, had improperly interfered in the decisions of a "hierarchical church." *Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976).

The local congregation of St. Sava voted in 1964 not to recognize the three new dioceses, but to continue affiliation with the original American Diocese. After this decision, certain members (including the one named plaintiff in this action who was then a member) stopped participating and paying dues and thus, under the church's bylaws, are no longer members of St. Sava. The majority faction, through its elected trustees, has continued to operate and maintain the church property since 1964, and has expended approximately $40,000 for those purposes.

There are several documents which affect the rights and interests of these parties. Title to the disputed property resides in the Serbian Eastern Orthodox Church of St. Sava, South St. Paul, Minnesota, through two deeds. The charter and bylaws provide that officers, to be elected by a majority vote of the congregation, will be in control of the temporal affairs of the local church. Individual members will also be received by majority vote; all members are required to pay dues. The bylaws also declare this parish to be subordinate to the Diocesan Constitution.

The Constitution of the Mother Church in Yugoslavia, Article 235, provides, "The Serbian Orthodox Church independently gov-

erns and freely manages church properties, church funds and memorial bequests (foundations), as [sic] also its own incomes within the limitations of canonical regulations and this Constitution." Articles 1, 8, 12 and 13, declare the order of the church to be autocephalous, hierarchical and episcopal, recognizing the Serbian Patriarch as the "supreme head" of the church. Only Article 5 refers directly to management of local church property. It reads in its entirety as follows:

> "The legal persons in the Serbian Orthodox Church are these: Patriarchate, Dioceses, church congregations, monasteries, foundations, independent institutions or such funds [sic], and according to the designation, individual temples.
>
> These legal persons may, in accordance with legal regulations, acquire and hold either personal or real properties, and have all the rights and obligations in that capacity."

The Constitution of the Mother Church established several church tribunals in ascending hierarchy, whose specific authority pertains primarily to discipline of church personnel and control of doctrine and educational institutions. It contains no provisions directly controlling admission to membership. Article 216 provides for temporary deprivation of rights in the church and temporary or final excommunications, but Article 218 requires a prior hearing before such punishment can be imposed. The record in this case does not refer to any such hearing or formal action regarding excommunication or deprivation of rights of the majority faction of St. Sava. It does, however, contain an affidavit of Bishop Firmilian, the Bishop elected in 1963 for the Middle Western diocese, in which he recognizes the local minority faction as the rightful members of St. Sava.

Both sides moved for summary judgment, and the case was dismissed by order dated October 21, 1981. Basing our decision on both Minnesota case law and recent United States Supreme Court decisions, we affirm.

■ It is axiomatic that civil courts may not constitutionally decide ecclesiastical or doctrinal disputes. *Maryland & Virginia Eldership of the Churches of God v. Church of God at Sharpsburg,* 396 U.S. 367, 368–70, 90 S.Ct. 499, 500–501, 24 L.Ed.2d 582 (1970) (Brennan, J., concurring). As a corollary to this principle, the first amendment requires that civil courts defer to adjudications by the highest tribunal in a "hierarchical" church organization on issues of religious doctrine or polity (form of government). *Serbian Eastern Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 724–25, 96 S.Ct. 2372, 2387–88, 49 L.Ed.2d 151 (1976). The *Milivojevich* opinion, long awaited by the parties in this action, overturned an Illinois court decision which had set aside the Mother Church's suspension, removal and defrockment of Bishop Dionisije Milivojevich. The Supreme Court determined that the highest tribunal of this "hierarchical church" clearly had appointive and removal power over that office. A later decision of the highest court reiterates the principle that matters clearly committed by church law or state law to tribunals of hierarchical churches may not be reviewed by civil courts. *Jones v. Wolf,* 443 U.S. 595, 602, 99 S.Ct. 3020, 3024, 61 L.Ed.2d 775 (1979).

■ The extent to which the *Milivojevich* decision informs the present action is limited in two respects, however. First, the structural relationship between the Mother Church and a local congregation was not at issue in *Milivojevich;* there is no indication that the Supreme Court considered the local congregations as being in a hierarchical relationship vis-a-vis the Mother Church, nor did the opinion encompass local or even Diocesan property disputes. "Whether corporate bylaws or other documents governing the individual property-holding corporations may affect any desired disposition of the Diocesan property is a question not before us." 426 U.S. at 724, 96 S.Ct. at 2387. Article 5 of the Constitution of the Mother Church places control of local church property in the hands of the local congregation, and by its local church charter and bylaws, St. Sava retains control over membership. We find, therefore, that

this general church is not "hierarchical" with respect to resolution of intra-congregational disputes over local property or membership qualifications.

Second, procedures for appointing the Bishop for the Diocese were well established in the Constitution of the Mother Church, and thereby committed to church adjudication. There are no comparable written procedures governing the resolution of disputes between factions of a local Serbian Eastern Orthodox congregation by higher church authorities. Thus, the Mother Church has not effectively spoken through well established channels in the instant case, though by affidavit the current Bishop "recognizes" the plaintiffs as the rightful and proper members of the Serbian Eastern Orthodox Church of St. Sava.

■ Nor can we dispose of the matter on the ground that the controversy is doctrinal in nature and therefore beyond the purview of the courts. The majority faction, through the American Diocese Constitution, professes continued adherence to the doctrine and tenets of the Mother Church, and the minority fails to allege or document any fundamental deviation in faith or basic beliefs by the majority since the founding of this local church. Thus no question of doctrinal dispute is before this court.

■ Though this action is not easily characterized, it would accurately be termed a matter of property ownership and membership qualification, to be determined by documents and proceedings of the local church government. Since it is not a doctrinal matter, nor a matter committed to adjudication by the highest tribunal in a hierarchical church, there is no first amendment barrier to resolution by the civil courts. We proceed, therefore, to a determination on the merits.

■ A recent decision of the United States Supreme Court clearly establishes the authority of civil courts to resolve questions of which of two factions of a local congregation is entitled to possess and enjoy property held in the name of the local church or in the name of trustees of that church. In *Jones v. Wolf,* 443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979), the United States Supreme Court acknowledged the states' "obvious and legitimate interest in the peaceful resolution of property disputes, and in providing a civil forum where the ownership of church property can be determined conclusively." 443 U.S. at 602, 99 S.Ct. at 3024. The property dispute in *Jones* arose from a schism in a local congregation in Georgia. The majority had voted at a congregational meeting to separate from the Augusta-Macon Presbytery of the Presbyterian Church in the United States (PCUS), a generally hierarchical church which gives higher echelons the power of review and control over local church actions. A commission appointed by the Augusta-Macon Presbytery investigated the dispute and eventually declared the minority faction to be the true congregation and withdrew all PCUS authority from the majority. In a suit brought by the minority, the state court, applying neutral principles of law, awarded judgment for the majority. On appeal, the United States Supreme Court strongly approved of the neutral principles of law approach but remanded for articulation of the specific principles of state law being applied. The Court further stated that a presumptive rule of majority representation, defeasible upon a showing that the identity of the local church is to be determined by some other predetermined means, would be consistent with both the first amendment and the neutral principles of law approach. 443 U.S. at 607, 99 S.Ct. at 3027.

A neutral principles of law analysis relies upon the language of deeds, the terms of local church charters, state statutes governing the holding of church property, provisions in the constitution of the general church concerning the ownership and control of church property, explicit trust provisions, and general rules of property law. The most recent and thorough explication of the neutral principles of law analysis and its utility was set forth by a divided court in *Jones v. Wolf:*

The primary advantages of the neutral-principles approach are that it is completely secular in operation, and yet flexible enough to accommodate all forms of religious organization and polity. The method relies exclusively on objective, well-established concepts of trust and property law familiar to lawyers and judges. It thereby promises to free civil courts completely from entanglement in questions of religious doctrine, polity, and practice. Furthermore, the neutral-principles analysis shares the peculiar genius of private-law systems in general—flexibility in ordering private rights and obligations to reflect the intentions of the parties. Through appropriate reversionary clauses and trust provisions, religious societies can specify what is to happen to church property in the event of a particular contingency, or what religious body will determine the ownership in the event of a schism or doctrinal controversy. In this manner, a religious organization can ensure that a dispute over the ownership of church property will be resolved in accord with the desires of the members.

    \*    \*    \*    \*    \*    \*

\* \* \* We therefore hold that a State is constitutionally entitled to adopt neutral principles of law as a means of adjudicating a church property dispute.

443 U.S. at 603–04, 99 S.Ct. at 3025. Under *Jones,* state courts may avoid entanglement problems by applying principles of law in a purely secular manner, taking care not to decide disputes on the basis of doctrinal matters, and deferring to decisions of church hierarchy only when church rules or constitutions or state statutes specifically require. This approach obviates consideration of whether the litigants belong to a "hierarchical church," an area fraught with constitutional pitfalls, and provides a forum even for members of a hierarchical church which has not developed effective rules for settling property disputes among members.

Finding present Minnesota law to be harmonious with the neutral principles of law approach, we now formally adopt this approach to resolution of church property and membership disputes. A brief discussion of our prior decisions in this area illustrates their compatibility with the neutral principles of law approach outlined above.

In an early suit by a majority faction of a congregation to recover possession of church real estate from the pastor called by the minority, this court held that it was constitutionally prohibited from finding that the majority members had given up their membership by departing from the true doctrines of the church. *East Norway Lake Norwegian Evangelical Lutheran Church v. Halvorson,* 42 Minn. 503, 44 N.W. 663 (1890).

The case of *Protestant Reformed Church of Edgerton v. Tempelman,* 249 Minn. 182, 81 N.W.2d 839 (1957), is cited by both sides in this appeal. The minority faction's brief quotes a rule from that opinion which would prohibit the majority faction from diverting church property to uses inconsistent with the purposes set forth in the articles of incorporation. However, later decisions of the United States Supreme Court would disallow state court enforcement of such a rule if it would necessitate a judicial determination of whether certain uses depart from prescribed doctrine or tenets of faith. *See Jones v. Wolf,* 443 U.S. 595, 602, 99 S.Ct. 3020, 3024, 61 L.Ed.2d 775 (1979); *Presbyterian Church in the United States v. Hull Memorial Presbyterian Church,* 393 U.S. 440, 450, 89 S.Ct. 601, 606, 21 L.Ed.2d 658 (1969). The majority faction here more accurately describes *Tempelman* as a contract-based decision, in that its disposition was to deny minority members relief until they had first exhausted their appeals within the church hierarchy, which had the authority under the Church Order (constitution) to hear, try and determine the controversy. Determination of ecclesiastical matters would be "final and binding" on the court. 81 N.W.2d at 848. The opinion further states, "The presbyterial form of government \* \* \* ordinarily requires, as does any democracy, even though ecclesiastic in its nature, that the minority submit to the will of the majority." 81 N.W.2d at 849.

We last considered a church property dispute in 1962. In *Veltman v. DeBoer,* 264 Minn. 248, 118 N.W.2d 808 (1962), a majority faction sought to sell church property without giving the minority notice or a voice in the decision as required by the articles of incorporation. This court specifically declined to rule on which faction had doctrinally adhered to the original teachings, and remanded for a determination of whether the minority were in fact members, and therefore entitled to notice and voting rights. 118 N.W.2d at 813–14. Although the general church articles provided for appeal to higher authorities in the synod, we noted that the schism had divided the church at all levels, and hierarchical authority had disintegrated, not unlike the church division in the case at bar.

Finally, in a dispute over the right of two factions to use of church property and dismissal of a pastor, we summarized our approach to such litigation as follows:

Where a number of persons associate to form a religious congregation, to acquire property for its use, and incorporate for the more convenient holding and control of the property, the constitution or body of rules which they adopt to prescribe who shall be members of the corporation, and entitled to share in the control of it, is the contract by which they are bound. That right to a share in the government of a corporation is a civil right, which the law will protect, and the courts will therefore determine who are the members of the corporation.

*Blauert v. Schupmann,* 241 Minn. 428, 435, 63 N.W.2d 578, 583 (1954) (quoting *East Norway Lake Norwegian Evangelical Lutheran Church v. Halvorson,* 42 Minn. 503, 508, 44 N.W. 663, 665 (1890)). Reading these cases together, valid Minnesota law in this area may be described as a presumptive rule of majority representation, defeasible upon a showing that the identity of the local church is to be determined by some other means under written rules of church government, with an expressed willingness by the court to enforce the contractual agreements of the parties. This is a rule

which the United States Supreme Court, in *Jones v. Wolf,* specifically found consistent with the first amendment and the neutral principles of law analysis. 443 U.S. at 607, 99 S.Ct. at 3027. The Court in *Jones* also observed that "Majority rule is generally employed in the governance of religious societies. * * * Furthermore, the majority faction generally can be identified without resolving any question of religious doctrine or polity." *Id.* (citation omitted).

The case before us invites dismissal on the merits under both Minnesota case law and the *Jones v. Wolf* analysis. The majority faction determined the course this congregation should follow at a regular congregational meeting. The minority has not been unlawfully excluded under the church bylaws, but rather chose to leave the church some 19 years ago, and has ceased to pay dues as required by the bylaws of the local church. Under *Blauert v. Schupman* and *East Norway Lake,* the majority should prevail unless, as in *Tempelman,* the matter is clearly committed to a church tribunal for adjudication. The minority faction has identified no specific provision of any church charter or constitution which creates an explicit trust for the general church or commits the resolution of local property disputes to the church hierarchy, whereas under the local church charter, control of temporal affairs of the local church resides with its officers. Although this is a hierarchical church in some respects, the general provisions of the Constitution that give the Mother Church "jurisdiction" over all church affairs are in conflict with this local charter and bylaws, and Article 5 of the Constitution of the Mother Church gives church congregations the power to "acquire and hold either personal or real properties, and have all the rights and obligations in that capacity." Thus, the presumptive rule of majority representation must result in judgment for the majority faction of St. Sava, under the deeds, the local charter and bylaws, and the Constitution of the Mother Church.

The *Jones v. Wolf* neutral principles of law analysis produces the same result, but

bypasses a consideration of whether the church is hierarchical in structure. Looking only at the deeds, charter, bylaws and Constitution of the Mother Church, we find that control over church property resides in the majority of the local congregation in this case.

Affirmed.