JOSEPH P. DUFFY, JR. v. PARK TERRACE
SUPPER CLUB, INC., AND ANOTHER.
GEORGE SCHAUMBURG, APPELLANT.

206 N. W. 2d 24.

March 23, 1973—No. 43630.

494

*Feinberg, Mirviss, Meyers, Schumacher & Malmon, James J. Schumacher,* and *George G. Seltz,* for appellant.

*Robins, Meshbesher, Singer & Spence,* and *Russell M. Spence,* for respondent.

Heard before Knutson, C. J., and Todd, MacLaughlin, and Olson, JJ.

PER CURIAM.

Defendant George Schaumburg appeals from a judgment and from an order of the Hennepin County District Court denying his motion for a new trial. The trial court awarded plaintiff, Joseph P. Duffy, Jr., a 50-percent interest in the outstanding common stock of defendant corporation, Park Terrace Supper Club, Inc. (Park Terrace) and directed defendant Schaumburg to convey said stock to plaintiff. The trial court's decision was based on oral modifications of an existing written stock option and an oral agreement as to the extension of time of performance of said stock option. The trial court also found that if Schaumburg (hereafter referred to as defendant) had any rights under the original option agreement, he had either waived them or was estopped from asserting them. We affirm.

In the fall of 1966, defendant entered into an agreement to purchase Park Terrace and paid $10,000 down on the purchase price. In order to raise additional capital for completing the purchase and remodeling the premises to open for business, defendant contacted Patrick Moore, who agreed to assist in the financing in exchange for receiving 50 percent of the outstanding stock of the corporation. Mr. Moore did arrange financing at Northeast State Bank by securing the guaranty of the loan by his brother, Robert Moore. The guarantor and the bank insisted that

a third party, skilled in the operations of a liquor establishment, be involved, and defendant and Patrick Moore agreed upon the inclusion of plaintiff in the corporate structure.

At this time, defendant, Moore, and plaintiff agreed that plaintiff would eventually have one-third of the outstanding 600 shares of stock of the corporation, for a nominal consideration of $1 per share. Plaintiff was given an option to purchase 100 shares from defendant and 100 shares from Patrick Moore, which would leave each of them 200 shares. Plaintiff's only obligations at this time were to assist in the setting up of the operation and to consult on its day-to-day business activities.

The option agreements were reduced to writing in April 1967 and were limited to a 2-year period. There is evidence that plaintiff was reluctant to place the stock in his own name at this time because of possible complications regarding his ownership of a liquor license in the city of Minneapolis, although the business of the corporation was being conducted in the city of St. Louis Park. In the late summer of 1967, defendant expressed a desire to terminate his association with Patrick Moore. Plaintiff testified that at this time defendant represented to him that if he would assist in arranging the financing to purchase Moore's interest in the corporation, defendant would increase plaintiff's option interest in the corporation from one-third to 50 percent.

Defendant, plaintiff, Moore, and defendant's attorney were also involved in another corporation, House of Prime, Inc., which owned certain real estate adjacent to the then-proposed Radisson South Hotel. The evidence discloses that the corporation was dissolved in 1967 as part of the negotiations to obtain Patrick Moore's interest in Park Terrace. In that dissolution, Patrick Moore paid $5,000 into the Prime corporation, which funds were used to pay the attorney of defendant, and in exchange therefor, Moore was given the real estate owned by House of Prime, Inc. Defendant received the outstanding 300 shares of stock of Park Terrace held by Moore, which he then placed in his own name. The dissolution agreement referred to the options originally

given to plaintiff by defendant and Moore, and Moore's transfer to defendant was made subject to plaintiff's option to purchase 100 shares of the stock transferred. No mention was made of the alleged subsequent agreement between defendant and plaintiff permitting plaintiff to acquire 50 percent of the Park Terrace stock. No consideration was paid to plaintiff for his 25-percent interest in House of Prime, Inc.

In addition, about this time plaintiff signed as a guarantor of a loan to Park Terrace from Franklin National Bank in the amount of $50,000. Plaintiff also assigned proceeds from certain cigarette machines as an additional guaranty of the loan. In January 1968, the Citizens State Bank loaned the corporation $52,500, and plaintiff signed as a guarantor of $35,000 of said note. Plaintiff testified that all of the actions that he took at this time were based upon the representation to him by defendant that his interest in the corporation would be increased from one-third to 50 percent. Defendant sought to deny this in his testimony, but did admit that the deposition answers he had given earlier indicated that at least there was a discussion regarding the increased interest of plaintiff in Park Terrace. Plaintiff was a member of the board of directors of the corporation for a period of time. The evidence indicated that plaintiff and defendant contacted each other on a regular basis, both as to business matters and as to limited social activities.

Plaintiff testified that in February 1969 he expressed to defendant a desire that his stock be transferred to him, and that defendant indicated that the transfer could be made at any time. The evidence further discloses that there was a discussion regarding liquor license problems because of a minor violation which had occurred at the establishment in St. Louis Park. There was also testimony that plaintiff's attorney had advised him that it would be in his best interests to delay transfer of the stock until the fall of 1969. Defendant was aware of this situation but denied that he acquiesced in it.

The original written stock option providing for transfer of

one-third interest to plaintiff expired by its terms on April 22, 1969. Plaintiff testified that the parties at that time were carrying on negotiations regarding the purchase by plaintiff from defendant of his entire interest in the corporation, and that plaintiff was relying on the prior understanding that his stock did not have to be transferred until the fall of 1969. On May 7, 1969, plaintiff's attorney wrote defendant demanding that the purchase agreement be finalized, or, in the alternative, that defendant transfer to plaintiff 50 percent of the outstanding stock of the corporation. On June 23, 1969, plaintiff's attorney again wrote defendant demanding the transfer of 300 shares of the stock of the corporation to plaintiff and tendered a check for $300 in payment of said stock. Defendant returned the check and denied that plaintiff had any right under the original written option agreement or under any alleged oral modifications of the option agreement.

The trial court held that the evidence was clear and convincing that there had been an oral modification of the original written stock option agreement; that plaintiff was entitled to 50 percent of the outstanding stock of the corporation; and that there had been an extension of the time for performance of the option agreement as modified. Further, the trial court held that defendant was estopped by his conduct and actions from relying on the written stock option agreement, and, in the alternative, that defendant had waived any rights that he may have had under the original agreement as orally modified.

In considering this appeal we are governed by the rule that when the action is tried by the court without a jury its findings will not be reversed on appeal unless they are clearly erroneous, and this applies whether the appeal is from a judgment or from an order granting or denying a new trial. In re Estate of Balafas, 293 Minn. 94, 198 N. W. 2d 260 (1972).

Defendant asserts that the trial court erred in allowing introduction of parol evidence over objection as to conversations between the parties regarding the stock option contract of April

1967. Defendant cites numerous cases holding that the express written terms of a contract cannot be varied by parol evidence. These cases deal with attempts to vary the terms of a written contract based on conversations prior to or contemporaneous with the execution of the contract. See, e.g., McCarthy's St. Louis Park Cafe v. Minneapolis Baseball & Athletic Assn. 258 Minn. 447, 104 N. W. 2d 895 (1960). In this case, the conversations which plaintiff relies upon as an oral modification of the written option agreement occurred subsequent to the execution of the option contract. We have held that the parol evidence rule is not violated by testimony of subsequent discussions in transactions relating to alterations of the original contract. Steller v. Thomas, 232 Minn. 275, 45 N. W. 2d 537 (1950); Trovatten v. Minea, 213 Minn. 544, 7 N. W. 2d 390 (1942).

Defendant further seems to rely on the dissolution agreement of House of Prime, Inc., which occurred in December 1967, as an additional written agreement which cannot be varied by parol evidence. Parol evidence introduced as to conversations taking place at the time of the dissolution were not for the purposes of modifying the dissolution agreement, but rather went to modification of the original stock option contract of the previous April. Consequently, these conversations were within the exception to the parol evidence rule noted earlier. Nor can defendant claim that the use of the parol evidence violates the statute of frauds since it is settled law in this state that an option agreement is a unilateral contract and as such is not within the statute of frauds. Shaughnessy v. Eidsmo, 222 Minn. 141, 23 N. W. 2d 362 (1946).

Defendant contends that the trial court erred in its conclusions of law holding that the evidence was clear and convincing both that the original stock option agreement was modified to increase plaintiff's option from one-third to 50 percent and, further, that the agreement was modified with regard to the manner and time within which it could be exercised. We have held that the evidence must be clear and convincing to justify

setting aside a written contract and holding it as abandoned or substituted by a subsequent parol contract at variance with its terms. Dwyer v. Illinois Oil Co. 190 Minn. 616, 252 N. W. 837 (1934); John A. Stees Co. v. Willis, 151 Minn. 192, 186 N. W. 391 (1922).

A careful review of the records and proceedings herein indicates that the evidence more than adequately meets this standard. The original written option agreement given to plaintiff was for a nominal consideration and imposed upon him no financial obligation regarding the operation of the business. At the time of the oral modification of the agreement, plaintiff undertook substantial financial obligations on behalf of the corporation. Defendant testified that he was aware that plaintiff was of the opinion that as of this time he was entitled to a 50-percent interest in the corporation and that defendant never contradicted that opinion.

The oral agreement as to extension of time took place while plaintiff was contemplating the purchase of defendant's interest. Defendant was further aware that plaintiff's lawyer had advised delaying the transfer of the stock because of a liquor law violation which had occurred at the corporation's place of business. Defendant again admits he did not advise plaintiff that he objected to such an extension.

The trial court found the testimony of plaintiff was, on the whole, frank and candid, while the testimony of defendant was, on the whole, disingenuous. The trial court was correct in its conclusion that the original written option contract had been amended by oral agreement so as to grant to the plaintiff the right to purchase 50 percent of the outstanding stock of the corporation and that the time and manner of performance had been modified by the parties by oral agreement. Furthermore, the trial court was correct in finding that plaintiff had performed his obligations under the option agreement as orally amended. The finding that defendant is obligated to convey to plaintiff 50 percent of the outstanding stock of the corporation upon

plaintiff's again tendering the purchase price of $300 is more than adequately sustained by the record herein.

The trial court also based its conclusions upon doctrines of estoppel and waiver. Having disposed of the matter upon the evidentiary question of oral modification of the agreement and performance by the plaintiff, we need not consider the further questions of estoppel and waiver. Suffice it to say, the record justifies and supports the conclusions of the trial court that there was adequate evidence for a finding of estoppel and waiver by defendant.

Affirmed.