Jerry W. NORD et al., Appellants,

v.

James R. HERREID et al., Respondents.

No. 51360.

Supreme Court of Minnesota.

May 8, 1981.

Harry N. Ray, Minneapolis, for appellants.

Rodney M. Hynes, Minneapolis, for respondents.

SCOTT, Justice.

Plaintiffs Jerry W. Nord (Nord) and Elmer J. Gipson (Gipson) appeal from the April 10, 1980, order of the Rice County District Court directing the entry of judgment in favor of defendants James R. Herreid (Herreid) and Charles E. DeMann II (DeMann), d. b. a. Central Block Partners. We reverse and remand for a trial on the merits.

On September 15, 1977, defendants Herreid and DeMann, as lessors, and plaintiffs Nord and Gipson, as lessees, entered into a 5-year lease agreement for "premises occupied and known as Suite 108–110 situated on the second floor of the Central Block Building." The lease called for rental payments in the amount of $300 per month and provided the lessees with an option to renew and negotiate a new lease for an unspecified period of time. The standard form lease agreement was accompanied by a series of obligations running to the benefit of the lessors relating to the lessees' use of utilities and payment of taxes and assessments. The lease also contained the following provision:

That said Lessees also agree at said Lessee's own cost and expense to put and keep *said premises* in such condition that they will comply with all federal, state and municipal Laws, Charters, Ordinances and Regulations, and furnish at said Lessee's own risk, cost and expense any additional plumbing, ventilation, fire escapes or protection or other improvements required by State, Municipal, or other lawful authorities.

(Emphasis added.) Plaintiffs commenced the instant action to recover damages and lost profits occasioned by the alleged breach of the lease agreement by the lessors. Specifically, plaintiffs contend that they were never able to occupy the premises because defendants failed to place the building in a condition fit for occupancy or in a condition in compliance with the state building code by the date that plaintiffs were to occupy the premises. Additionally, they contend that they expended sums of money to ready the suites covered by the lease agreement but that the inadequacy of the building in which the suites were located rendered the leased premises unfit for the purposes for which they were rented.

Defendants' answer to the complaint contains general denials to the allegations contained therein and affirmatively alleges that the written lease agreement fell within the statute of frauds, Minn.Stat. § 513.05, and that any allegations of oral promises contrary to the express terms of that lease are inadmissible under the parol evidence rule. Defendants also allege that the plaintiffs leased the premises "as is" and that plaintiffs, rather than defendants, contracted to render the premises fit for use and occupancy. Defendants also counterclaim for the rent due and payable for the period from October 1977 to May 1978, the time of commencement of this action.

Although the case was scheduled for trial before a jury, prior to trial the defendants moved the court for summary judgment based upon the written lease agreement. By its order dated April 10, 1980, the trial court determined that no genuine issue of material fact existed and that the plain-

tiffs' complaint failed to state a claim upon which relief could be granted. The trial court then directed the entry of judgment in favor of the defendants, consistent with their counterclaim, in the amount of $9,300, together with defendants' costs and disbursements.

Two issues are presented for our review. First, whether, based upon the pleadings and discovery taken, any genuine issue of material fact exists which would make it inappropriate for the trial court to enter summary judgment in defendants' favor. Second, whether the trial court erred in determining that parol evidence was inadmissible to interpret and explain the lease agreement.

 1. Under Rule 56.03, Minn.R. Civ.P., a summary judgment may be granted to either party if "there is no genuine issue as to any material fact." In construing this rule, we have held that "the moving party has the burden of proof and * * * the nonmoving party has the benefit of that view of the evidence which is most favorable to him." *Sauter v. Sauter*, 244 Minn. 482, 484, 70 N.W.2d 351, 353 (1955); *see* 2 J. Hetland & O. Adamson, *Minnesota Practice* 571 (1970). All doubts and factual inferences must be resolved against the moving party. *Anderson v. Twin City Rapid Transit Co.*, 250 Minn. 167, 186, 84 N.W.2d 593, 605 (1957); 2 J. Hetland & O. Adamson, *supra* at 572. However, as the *Anderson* court stated, "it is no part of the court's function to decide issues of fact but solely to determine whether there is an issue of fact to be tried." 250 Minn. at 186, 84 N.W.2d at 605. The care with which an inquiry required by Rule 56.03 should be conducted was emphasized by this court in *Donnay v. Boulware*, 275 Minn. 37, 144 N.W.2d 711 (1966). There, we stated that "[s]ummary judgment is a 'blunt instrument' and * * * should be employed only where it is perfectly clear that no issue of fact is involved." *Id.* at 45, 144 N.W.2d at 716.

 It appears that several issues of material fact exist in the instant case. Plaintiffs claim that they were never able to operate their beauty parlor because the City of Northfield refused to give them an occupancy permit. They contend that the occupancy permit was denied because the Central Block Building had several serious building-code violations on its first, second and third floors. Plaintiffs rented space only on the second floor. Defendants deny that any building-code violations existed and that the defendants were able to procure an occupancy permit for the plaintiffs. Although the lease indicates that the plaintiffs accepted the premises "just as they are," there is a conflict in the record as to whether the defendants agreed that it was their responsibility to procure the occupancy permit. If the defendants did so agree, then obtaining the permit would constitute a condition precedent to any liability under the lease.

 2. Parol evidence may be considered in determining whether a condition precedent exists. The trial court erred as a matter of law when it held that no parol evidence was admissible. As we stated in *Craigmile v. Sorenson*, 239 Minn. 383, 58 N.W.2d 865 (1953), "[t]he rule is clear, however, that a written document, unconditional on its face and fully executed, can be shown by parol testimony to have been subject to a condition precedent." *Id.* at 394, 58 N.W.2d at 871.

 Moreover, the record indicates that parol evidence regarding the parties' intentions should have been admitted for additional reasons. First, the record indicates that after the lease was signed the parties had approximately twelve discussions regarding each others' rights and obligations under the lease. Testimony of subsequent conversations does not fall within the ambit of the parol evidence rule.[1] In *Duffy v.*

---

1. The practice of admitting parol testimony of events occurring subsequent to the signing of a contract is not a recent exception to the parol evidence rule. Over a century ago Justice Mitchell, in *Liljengren Furniture & Lumber Co. v. Mead*, 42 Minn. 420, 44 N.W. 306 (1880), stated that the parol evidence rule "does not, of course, exclude evidence of a subsequent

*Park Terrace Supper Club, Inc.,* 295 Minn. 493, 206 N.W.2d 24 (1973), this court stated:

In this case, the conversations which plaintiff relies upon as an oral modification of the written option agreement occurred subsequent to the execution of the option contract. We have held that the parol evidence rule is not violated by testimony of subsequent discussions in transactions relating to alterations of the original contract.

*Id.* at 496, 206 N.W.2d at 27.

▇▇▇ Second, the parol evidence rule has no application to documents that are ambiguous. In *Betlach v. Wayzata Condominium,* 281 N.W.2d 328 (Minn.1979), we held that all evidence offered to clarify or explain ambiguous terms in letters exchanged by a sublessee and sublessor should be admitted. *See also Republic National Life Insurance Co. v. Lorraine Realty Corp.,* 279 N.W.2d 349 (Minn.1979). In the instant case the lease requires the plaintiffs to keep the "premises" in good repair and in compliance with all federal and municipal regulations. The ambiguity, then, is in what constitutes the "premises." The following language is found at the top of the lease:

Premises occupied and known as Suites 108–110 situated on the second floor of the Central Block Building.

The trial court concluded that the word "premises" included the entire building, rather than the suites described at the top of the lease. The trial court's interpretation of the term "premises" would place responsibility on the plaintiffs to see that the entire building was in good repair. Since at least four other commercial establishments rented space on the first floor, the trial court's construction would require the plaintiffs to keep those establishments in proper repair. Although we do not reject the trial court's interpretation as a matter of law, since the intent of the parties is unclear parol evidence is admissible to clarify this ambiguity.

Reversed and remanded for trial on the merits.

change of the contract * * *." *Id.* at 424, 44 N.W. at 308 (emphasis in original). Justice Mitchell's leadership in the development of the parol evidence rule is *discussed in* Note, *Justice William Mitchell: A Centennial Tribute,* 7 Wm. Mitchell L.Rev. 1, 15–17 (1981).