**L.J. PATTERSON, et al., Appellants,**

v.

**BETHEL BAPTIST CHURCH, et al., Respondents.**

**No. C9–85–2199.**

Court of Appeals of Minnesota.

June 10, 1986.

Joseph J. Roby, Jr., Greg C. Gilbert, Duluth, for appellants.

Mark L. Knutson, Duluth, for respondents.

Heard, considered, and decided by WOZNIAK, P.J., and HUSPENI and RANDALL, JJ., with oral argument waived.

## OPINION

RANDALL, Judge.

L.J. Patterson, et al., (Patterson) appeals from the trial court's grant of summary judgment to respondent, dismissing Patterson's claims. Patterson sued Bethel for reinstatement of his membership after Bethel terminated his membership citing "an organic division" in the church. The Minnesota Baptist Conference affirmed the finding that Bethel was "organically divided." The trial court found that the dispute was doctrinal and that the civil court was an inappropriate forum in which to litigate the parties' dispute. We affirm the trial court.

## FACTS

Bethel Baptist Church, incorporated January 19, 1891, is affiliated on a voluntary basis with the Minnesota Baptist Conference, but is otherwise an independent church. No organization has authority over Bethel, except as granted in Bethel's constitution and bylaws. Bethel is managed by its church board.

For several years, Bethel has been divided over doctrinal, leadership and church affiliation issues. A minority group of Bethel's members, headed by appellant, Patterson, sent a letter to Bethel's Pastor, Fred Lund, on January 6, 1984. The letter details the disputes, most of which appear to be doctrinal. The letter stated, in pertinent part:

> One of the things Fred stated when he came here was that if problems arose he would address himself to the problem and handle it. He has failed to do so in a scriptural way.

> \* \* \* \* \* \*

> I see it as totally unacceptable that he considers putting thousands of dollars into remodeling a church that is 100% functional while the mission's budget is

being cut. He is trying to see to it that this church is laying up its treasures on earth while disregarding our treasures in heaven.

*     *     *     *     *     *

Fred is not fundamental in doctrine, nor Evangelical in his presentation of the Word. He refused to give an invitation or Altar Call at the close of a service as has been done in Bethel Church for many decades. He lied to the pulpit committee when interviewed as a candidate, knowing that he would not be recommended to the church if he told the truth about his Doctrinal statement, leading the pulpit committee to believe that he was Premillennial, that he believed in the pretribulation rapture of the Saints, in the Judgment seat of Christ as stated in II Cor. 5:10, and the Judgment of the Great White Throne as found in Rev.20:11–15.

Bethel agreed to hold a grievance proceeding. It gave notice and then held a meeting on April 11, 1984, to discuss the situation. Appellants, as well as other church members, attended. A vote was taken on the following issue:

I support the ministry and direction of Bethel Baptist Church, and I trust the pastoral staff, the Church Board, and standing committees.

The result of the vote was 67–yes; 38–no; 3–abstain.

A second meeting was called on April 15, 1984, and a second vote taken. The issues were divided in accordance with the minorities' wishes, resulting in the following:

| | yes | no | abs. |
|---|---|---|---|
| I support the ministry and direction of Bethel Baptist Church | 69 | 31 | 0 |
| I trust the pastoral staff | 55 | 45 | 0 |
| I trust the Church Board and standing committees | 53 | 45 | 2 |

The meeting minutes reflect the vote tally showing an "organic division" of the church. Bethel agreed to submit the matter to the Minnesota Baptist Conference in accordance with Bethel's constitution, to determine disposition of the church property. Members were given the opportunity, at the end of this meeting, to sign a statement aligning themselves with the Church and the Church Board. Some members signed the statement. Additional members signed the statement after church services.

The Minnesota Baptist Conference Board of Stewards met with appellants and respondent on May 11, 1984. The list of those members who signed or did not sign statements was presented to the Minnesota Baptist Conference. The Board of Stewards of the Minnesota Baptist conference determined that there existed an "organic division" of Bethel's congregation.

Following the May 11 steward's meeting, on May 15, 1984, Bethel held a church members' meeting. The minutes of the May 15, 1984, meeting reflect that the Bethel Board explained the implications of the stewards' vote to the congregation and that, because the stewards found an organic division, the minority faction members would lose their membership in the church. Following that meeting, the church board sent letters of termination to those who indicated they did not support Bethel's pastor and staff. Where Bethel was in doubt as to a member's status on the issue, it inquired of the member, and the church terminated only those members who indicated they did not support the pastor and staff.

In September, 1984, the Conference reconsidered and affirmed its original decision that the church was organically divided.

### ISSUE

Did the trial court properly grant respondents' summary judgment motion?

### ANALYSIS

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is

entitled to a judgment as a matter of law." Minn.R.Civ.P. 56.03. The moving party has the burden of proof and the nonmoving party has the benefit of that view of the evidence most favorable to him. *Nord v. Herreid,* 305 N.W.2d 337, 339 (Minn.1981). All doubts and inferences must be resolved in favor of the non-moving party. The court's function is not to decide issues of fact, but to determine whether there are issues to be tried. *Id.* at 339.

Appellants, the ousted church members, argue that the trial court erred in concluding that the dispute was doctrinal. They claim their suit is based on their property right to use the church facilities and the church's name. Respondents argue that in determining whether an organic division existed and in determining to whom the church property belonged, Bethel followed the procedures outlined in its constitution, including placing the matter before the Minnesota Baptist Conference for final resolution. They argue that the civil courts should not interfere in this dispute because it is doctrinal.

The trial court, in its memorandum granting respondent's summary judgment motion, stated:

> The court feels that this dispute is not subject to the Civil Courts, and such dispute has been addressed by the Constitution and By-laws of the defendant church. This is the procedure that has been followed; and as members of the congregation, the plaintiffs have agreed to this government of their church. The authority for such procedure and government is within the congregation. * * * Any questions that may be submitted to the Conference Board of Stewards are final once the Board of Stewards has ruled. * * * The Court feels that the basic problem causing the schism or "organic division" is doctrinal. The property issue is minor. * * * The Court feels that there is nothing to come before the Civil Courts at this time.

Bethel's constitution provides methods for termination of membership both at the member's request and at the Church Board's instigation. Article IV, sec 4.6(A) of Bethel's constitution provides that "Members who persist in unchristian lives and who habitually neglect their church may be removed from membership." In the case of grievances among members, according to Bethel's constitution, "the disputants shall be dealt with in accordance with the rules set forth in Matthew 18:15–20 and Galations 6:1–5. No public charge shall be made until such reconciliation has been attempted." Article IV, sec. 4.6(B). This kind of removal is undertaken "for the purpose of bringing a member to repentance and reformation." *Id.* Finally, the constitution provides that in the event of an "organic division" of the church, the disposition of the church property shall be determined by the Baptist Conference Board of Stewards. The constitution states:

> The government of this church is vested in the body of members who compose it. Thus, the final authority for decision shall be the congregation to whom the Church Board and the staff are responsible. The management of the corporate and business affairs of the church shall be assigned to the Church Board consisting of nine (9) members and established pursuant to the By-Laws of the church.

■ The right to share in the government of a corporation, such as a church, is a civil right which the civil courts will protect. *Blauert v. Schupmann,* 241 Minn. 428, 435, 63 N.W.2d 578, 583 (1954).

■ However, the first amendment prohibits civil courts from resolving church disputes on the basis of religious doctrine and practice. This prohibition frees the civil courts from entanglement in religious doctrine, polity, and practice. *Jones v. Wolf,* 443 U.S. 595, 603–04, 99 S.Ct. 3020, 3025–26, 61 L.Ed.2d 775 (1979). Minnesota courts apply the neutral principles of law test of *Jones* in determining whether a matter involving a religious body may be resolved in the civil court system. *Piletich v. Deretich,* 328 N.W.2d 696 (Minn.1982) holds that courts

> may avoid entanglement problems by applying principles of law in a purely sec-

ular manner, taking care not to decide disputes on the basis of doctrinal matters, and deferring to decisions of church hierarchy only when church rules or constitutions or state statutes specifically require. This approach obviates consideration of whether the litigants belong to a "hierarchical church," an area fraught with constitutional pitfalls, and provides a forum even for members of a hierarchical church which has not developed effective rules for settling property disputes among members.

*Id.* at 701.

In analyzing whether summary judgment in favor of the church was proper, the *Piletich* court examined three factors: (1) the hierarchical organization of the church and whether control of the church's property is vested in the local congregation through its constitution and bylaws; (2) the written procedures for dispute resolution between the factions; and (3) whether the dispute is doctrinal. A doctrinal dispute is beyond the purview of the civil court system. *Id.* at 699–700. If the matter is neither doctrinal, nor committed to adjudication by the church hierarchy, the first amendment does not bar resolution in the civil courts. *Id.* at 700. Appellant urges this court to apply this "neutral principles of law" analysis to the present case, reverse the summary judgment, and grant a trial on the merits.

■ Appellant claims there is a genuine issue of material fact as to whether there was an organic division within the church. The Bethel constitution does not define 'organic division,' however, appellant concedes that in the Bethel congregation, organic division indicates a doctrinal dispute. This matter should be decided only by the church tribunal. The fact that a claimed property right may be involved does not automatically remove a doctrinal dispute once it has arisen, from the *Piletich* bar against civil courts resolving doctrinal disputes.

Bethel's constitution states:

In the case of organic division of the church membership, the church property shall belong to those members who abide by this Constitution. Should any controversy arise as to who is abiding by this Constitution, the question shall be submitted to the Board of Stewards of the Minnesota Baptist Conference and their decision shall be final.

Art. VI, sec. 6.1. The constitution, Article VI, sec. 6.3 also states:

Should conditions arise when, for any reason, the church ceases to function, the church property shall be transferred to the Baptist General Conference.

■ By joining, the membership in Bethel consented to the terms of its constitution and bylaws. *See Protestant Reformed Church of Edgerton v. Tempelman,* 249 Minn. 182, 81 N.W.2d 839 (1957). The constitution provides that control of the property is in Bethel unless a controversy arises. In the event of a controversy, under Bethel's constitution, final resolution rests in the Baptist Conference. Civil courts are bound to recognize the church's constitution as controlling in resolving disputes. *Id.*

The civil courts should not and cannot enter into any dispute relative to doctrinal matters arising within a church organization nor can they interfere with or enter into any dispute relative to church government. It is a well-recognized rule binding upon the civil courts that, where a church congregation is divided, the group which has proceeded in accordance with the rules of its church government must be recognized as the group entitled to control of the physical property of any church belonging to that certain denomination.

*Id.* at 188, 81 N.W.2d at 845. We have reviewed the documents presented to the trial court and agree with the trial court that Bethel acted in a manner mandated by its constitution and did not act arbitrarily or capriciously.

■ Bethel's congregation held numerous meetings, the purpose of which was to resolve the differences. The record indicates that proper notice of meetings was

provided to all members. Minutes were taken at the meetings. Following a series of meetings, the church board determined that an "organic division" over doctrine existed. After giving notice to all members, the board submitted the matter to the Baptist conference. The Conference held two hearings, one on the matter as submitted and one based on appellant's request for rehearing. Appellant's due process rights were observed.

■ Appellant claims no written charges were submitted by the church board. Since appellants filed the grievance proceeding, it was not incumbent on Bethel to submit written charges. Once appellants filed their grievance, Bethel was obligated to follow procedures laid out in its constitution. The trial court found that it did, and we concur.

### DECISION

The trial court properly granted respondent's summary judgment motion. This matter is doctrinal and inappropriate for resolution in the civil court system.

Affirmed.