**FORD MOTOR CREDIT COMPANY, Respondent,**

**v.**

**BJL CORPORATION, Defendant.**

**Barbara B. STEELE, et al., Defendants and Third Party Plaintiffs, Appellants,**

**v.**

**FORD MOTOR COMPANY, Third Party Defendant, Respondent.**

**No. C9–87–599.**

Court of Appeals of Minnesota.

Sept. 8, 1987.

Douglas R. Rainbow, Dean A. LeDoux, Harstad & Rainbow, Minneapolis, for respondent.

Timothy D. Kelly, Thomas C. Power, Mackall, Crounse & Moore, Minneapolis, for appellants.

Heard, considered and decided by PARKER, P.J., and WOZNIAK and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

This is an appeal from a summary judgment dismissing Ford Motor Company as third party defendant in a suit by Ford Motor Credit Corporation against the appellants Barbara Steele and John Steele II. The appellants contend there are genuine material facts relating to their claims of conversion and fraudulent conveyance against Ford Motor. We affirm.

## FACTS

Bill Boyer Ford Cars Corporation (Bill Boyer Ford) operated a Ford dealership in Minneapolis. All Bill Boyer Ford stock was owned by BJL Corporation; Larry Rebling and appellants Barbara and John Steele owned all BJL Corporation stock. John Steele was president of the dealership. In December 1977, John Steele signed a dealership agreement on behalf of Bill Boyer Ford with Ford Motor Company (Ford Motor). Bill Boyer Ford's purchases of new cars from Ford Motor were financed through Ford Motor Credit Corporation (Ford Credit). Rebling and the Steeles signed personal guarantees in favor of Ford Credit guaranteeing Bill Boyer Ford's debts.

A dealership check for over $117,000 payable to Ford Credit was dishonored for insufficient funds in March 1980. Although the Steeles decided to quit the business, Rebling attempted to continue the dealership and find new investors. According to the Steeles, they were advised by Ford Credit representatives that Bill Boyer Ford had sufficient assets to cover its indebtedness to Ford Credit. On April 1, 1980, the Steeles sold their shares in BJL Corporation to Rebling and notified Ford Credit that they had transferred their stock to Rebling and that they had resigned their positions with BJL Corporation and Bill Boyer. The Steeles remained responsible as guarantors with respect to transactions and dealer obligations which were incurred prior to the Steeles' guaranty termination.

The dealership agreement was terminated on April 24, 1980, and Ford Motor agreed to repurchase parts and other inventory of Bill Boyer Ford. Rebling executed a general release on behalf of Bill Boyer Ford which waived the dealership's right to assert certain claims against Ford Motor.

When Ford Credit attempted to execute on its security interest in Bill Boyer Ford's assets, it became apparent that Marquette Bank had a security interest which had priority over Ford Credit's security interest in the same assets. Ford Motor paid the bank $175,000 in settlement of the bank's claims and charged that amount against Bill Boyer Ford accounts because Ford Motor previously had credited the dealer's accounts when it repurchased dealership inventory under the termination agreement. Rebling claimed Ford Motor dealt unfairly with Bill Boyer Ford during the liquidation period by making exaggerated "scratch and dent" discounts, by failing to compensate Bill Boyer Ford for returned parts, by refusing to pay substantial numbers of warranty claims, and by otherwise improperly interfering in the liquidation process.

In March 1981, Ford Credit claimed the Steeles and Rebling owed Ford Credit $262,805.49 because of their personal guarantees of Bill Boyer Ford's loans. When Ford Credit initiated a lawsuit to recover the sum, the Steeles brought a third party action against Ford Motor and Ford Credit. The Steeles claimed Ford Motor was liable for all amounts sought by Ford Credit because Ford Motor's alleged improper activities during the informal liquidation of Bill Boyer Ford prevented the dealership from paying off its debt to Ford Credit. Ford Motor moved for summary judgment dismissing the Steeles' third party complaint against it. The district court denied Ford Motor's motion "without prejudice" and allowed Ford Motor to renew its motion after ninety days.

In January 1987, Ford Motor again moved the district court for summary judgment dismissing the Steeles' third party complaint against it. Ford Motor argued that the Steeles were not the real party in interest and therefore lacked standing to assert a conversion claim against Ford Mo-

tor, and that the conversion claim against it was released by Rebling and Bill Boyer Ford. Ford Motor also asserted the Steeles' fraudulent conveyance claims were unfounded and that Ford Motor gave fair consideration for all property it received from Bill Boyer Ford. Ford Motor contended the Steeles' claim for punitive damages was improper because Ford Motor had not committed an independent tort.

The district court granted Ford Motor's motion for summary judgment and dismissed the Steeles' third party action against Ford Motor. The court concluded the Steeles had "presented no articulable facts" to support their allegations and "failed to establish a prima facie case of either fraudulent conveyance or conversion on the part of Ford Motor Company." The court concluded there was "no genuine issue as to any material fact in dispute." Judgment was entered March 19, 1987. The Steeles appeal from that judgment.

## ISSUE

Did the district court err by granting summary judgment?

## ANALYSIS

Summary judgment may be rendered

if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law.

Minn.R.Civ.P. 56.03. The evidence must be viewed in a light most favorable to the nonmoving party and summary judgment may be granted only if the movant has established that there are no genuine issues as to material facts and that the movant is entitled to judgment as a matter of law. *Sauter v. Sauter*, 244 Minn. 482, 484, 70 N.W.2d 351, 353 (1955). On appeal, this court only determines whether there are issues of fact to be tried. *Nord v. Herreid*, 305 N.W.2d 337, 339 (Minn.1981).

■ The Steeles allege that Ford Motor and Ford Credit by concerted action "converted over $250,000 of motor vehicles, parts, supplies, warranty claims and other Bill Boyer property." The Steeles allege that Ford Motor converted $175,000 which belonged to Bill Boyer Ford because, after paying Marquette Bank $175,000 in settlement of the bank's superior claims to the same assets, Ford Motor charged that amount to the dealer's parts account. All parties concede that the bank had a superior security interest in those assets and the record indicates that Bill Boyer Ford's account was charged because the account previously had been credited when the dealer returned parts to Ford Motor. Had the bank's superior security interest in those assets been properly satisfied, Bill Boyer Ford's account would not have been credited and the dealership would have had no claim against Ford Motor. Under the circumstances, the facts do not support the Steeles' conversion claim.

The Steeles also allege that Ford Motor assessed "unfair discounts for non-existent damage" to the seventy-five vehicles Ford Motor repurchased from Bill Boyer Ford. The total repurchase price was nearly $560,000; approximately $5,500 was deducted for conditioning, preparation, and repairs. There is no evidence in the record to support the Steele's allegations. Rebling signed a condition report for each of the seventy-five vehicles. The reports indicated that a limited number of cars had small dents or scratches and that some parts on cars were missing, broken, or damaged. The record contains no factual basis for concluding the deductions were unreasonable.

The Steeles allege that Ford Motor converted over $70,000 from the Bill Boyer Ford account for building maintenance which was neither needed nor performed. The Steeles claim the facilities were in good condition and did not need extensive repairs, but did not present specific evidence in support of that claim. A representative of Ford Motor testified by deposition that a heater which blew up and burned was replaced, a boiler was replaced, there were electrical problems, and roof repairs were made.

The Steeles allege that Ford Motor's refusal to pay substantial numbers of warranty claims after the dealership was terminated and its failure to provide credit for alleged amounts due constitute conversion of the warranty claims. There is no factual evidence showing what, if any, claims actually were made and there is no evidence in the record of the disputed dollar amount.

Finally, the Steeles assert that Ford Motor failed to give fair credit for returned parts. The record does not contain specific evidence showing what returned parts were not credited or what amount actually is disputed.

> When a motion for summary judgment is made and supported as provided in Rule 56, an adverse party may not rest upon the mere averments or denials of his pleading but must present specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Minn.R.Civ.P. 56.05. After reviewing the record, we conclude the district court did not err by granting summary judgment because the Steeles failed to present "specific facts" in support of their conversion claims. *See id.*

The Steeles assert that the same acts which constitute conversion of dealership assets also constitute fraudulent conveyance. The problem, again, is that the Steeles' allegations are not supported by "specific facts." Consequently the district court did not err by granting Ford Motor's motion for summary judgment on this claim.

> One cannot successfully oppose a motion for summary judgment by relying upon general, conclusory statements. The non-moving party must demonstrate that at the time the motion is made specific facts are in existence which create a genuine issue for trial.

*Alexander Construction Co., Inc. v. C & H Contracting, Inc.,* 354 N.W.2d 535, 537–38 (Minn.Ct.App.1984).

Since we conclude the district court did not err by granting summary judgment and dismissing the Steeles' third party action against Ford Motor, we do not address Ford Motor's assertion that the Steeles lack standing to sue. Ford Motor may recover allowable costs and disbursements under Minn.R.Civ.App.P. 139, but we deny attorney fees.

## DECISION

The district court did not err by granting summary judgment and dismissing the appellants' third party complaint against the respondent because the appellants failed to present specific facts in support of their claims of conversion and fraudulent conveyance.

Affirmed.