Janine Anne BAKER, Respondent,

v.

William CHAPLIN, individually and in his official capacity as a Minneapolis Police Officer, Appellant,

City of Minneapolis, Defendant.

No. C7–92–1622.

Court of Appeals of Minnesota.

March 16, 1993.

Review Granted May 11, 1993.

Roderick J. Macpherson, III, Minneapolis, for respondent.

Jerry W. Snider, Charles F. Webber, Faegre & Benson, Minneapolis, for appellant.

Considered and decided by FORSBERG, P.J., and PARKER and KALITOWSKI, JJ.

## OPINION

PARKER, Judge.

Appellant William Chaplin, challenging the trial court's denial of his motion for summary judgment, claims he is entitled to both qualified and official immunity. We affirm.

## FACTS

On September 27, 1990, President George Bush attended a function at the Hyatt Regency Hotel in downtown Minneapolis. Numerous social action groups and demonstrators participated in a rally outside the Hyatt to protest various policies of the Bush administration. Respondent Janine Baker attended the rally dressed in a men's business suit and wore a mask depicting the President's face. In addition, she carried a sign which read, "Q?? Why doesn't George sign U.N. Convention on Rights of Children?"

After listening to speeches made by representatives of the rally's sponsoring groups, Baker and the crowd congregated along Grant Street, where they expected the President's limousine to pass. Baker and the other demonstrators remained behind police barricades and stayed within the area the police had designated for them. A WCCO news crew filmed the demonstration.[1] The film depicts Baker standing at the front of the crowd at the corner of LaSalle Avenue and Grant Street. There were wooden police barricades directly in front of her, along Grant Street, and a second set of wooden barricades on her left side, along LaSalle Avenue.

A line of Minneapolis police officers holding riot batons stood in a row immediately

---

1. A videotape of the incident is part of the trial court record and was viewed by the panel.

in front of the barricades. Behind this first line of police officers were Secret Service agents and other security personnel, including Minneapolis Police Department supervisors. Minneapolis Police Sergeant William Chaplin, an instructor in the use of the riot baton, was among the supervisors standing behind the first line of officers.

As Baker stood at the corner holding her sign, the police barricade in front of her fell. Police officers picked up the barricade and moved the crowd back. Baker and the other demonstrators complied with police instructions and moved back, away from the barricade. As Baker moved back, the barricade along LaSalle Avenue began to topple. From the WCCO video, it is unclear whether Baker pushed the barricade or whether Baker lost her balance and grabbed at the barricade for support. In any case, the LaSalle Avenue barricade fell to the ground. Neither Baker nor any other demonstrators attempted to move into the street or cross the police line.

When the LaSalle Avenue barricade fell, Sergeant Chaplin was walking behind the first line of officers, holding his riot stick. He then lunged forward and, with both hands on the baton, thrust his riot stick into Baker's chest. Chaplin appeared to use a full-arm swing when hitting Baker. Baker fell to the ground. The videotape unequivocally shows that Baker made no threatening or aggressive actions and was complying with police orders to move back, away from the barricade. Baker was standing still when Chaplin struck her in the middle of the chest, approximately one-third of the way down her sternum.

After Chaplin hit Baker, he turned his back to her and put on a pair of gloves. No attempt was made to arrest, reprimand, or remove her from the scene.

The Minneapolis Police Department Policy and Procedure Manual, as well as written materials used to train Minneapolis police officers, contains explicit instructions regarding the use of riot batons. The policy manual specifically instructs police officers:

> A blow to certain parts of the human body can cause immediate death, or grievous injury that can lead to a permanent physical or mental incapacity or eventual death. Areas susceptible to death or possible severe injury are the * * * chest (in vicinity of the heart) * * *. Unless deadly force is justified, officers should avoid striking any of the above-described areas.

The manual further provides that police officers may use deadly force "only when necessary * * * [t]o protect themselves or others from apparent death or great bodily harm." Training materials used by the Minneapolis Police Department to instruct officers in the proper use of the riot baton contained the same caution.

John Peters and Lou Reiter, both experts in the field of police tactics and training, submitted affidavits in opposition to Chaplin's motion. Both experts agreed the force used by Chaplin was excessive and unwarranted. Peters characterized Chaplin's blow as "deadly force."

Four officers from the Minneapolis Police Department submitted affidavits in support of Chaplin's motion. Each stated that Chaplin, when hitting Baker, used the short thrust technique, a method of light "poking" with the riot baton, which is frequently used to control crowds. Their affidavits also stated their opinions that Chaplin's thrust was an appropriate use of force under the circumstances.

■ Baker began this action alleging civil rights violations under 42 U.S.C. § 1983 as well as common law claims of assault and battery. Sergeant Chaplin moved for summary judgment, contending that he was immune from suit under both federal and state law. The trial court rejected both his qualified and official immunity claims and accordingly denied his summary judgment motion. Appeal is from this order.[2]

---

**2.** Although a denial of summary judgment is normally not appealable, an order denying summary judgment may be appealed when a claim of immunity is asserted. *Anderson v. City of Hopkins,* 393 N.W.2d 363, 364 (Minn.1986).

## ISSUES

1. Is Sergeant William Chaplin entitled to qualified immunity from Baker's claim under 42 U.S.C. § 1983 as a matter of federal law?

2. Is Sergeant William Chaplin entitled to official immunity from Baker's state law claims as a matter of state law?

## DISCUSSION

On appeal from summary judgment, the reviewing court must determine if there are genuine issues of material fact and whether the trial court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). The evidence must be viewed in a light most favorable to the nonmoving party. *Clough v. Ertz*, 442 N.W.2d 798, 801 (Minn.App. 1989).

### I

The doctrine of qualified immunity to a section 1983 claim reflects the fundamental judgment that the public interest is not well served by imposing liability on public employees for the good-faith performance of their discretionary duties. *Bartlett v. Fisher*, 972 F.2d 911, 914 (8th Cir.1992). The Supreme Court has adopted an objective test to determine when immunity applies. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Under this objective standard, officials are entitled to qualified immunity when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. Qualified immunity is denied only when "it is obvious that no reasonably competent officer would have concluded" that the defendant's actions were legal. *Malley v. Briggs*, 475 U.S. 335, 342, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

 Thus, a government official sued for his or her actions in the line of duty is entitled to immunity from suit if a reasonable official could have believed that his or her actions were lawful, in light of clearly established law and the information the official possessed. *See Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). The right the official is alleged to have violated, however, must be sufficiently clear so that a reasonable official would understand that the conduct violates that right. *Id.* This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but, rather, in light of preexisting law the unlawfulness must be apparent. *Id.*

 Chaplin maintains he is entitled to immunity because reasonable officers could disagree whether his actions constituted excessive force. For purposes of summary judgment, however, the trial court and this court are required to view the evidence in the light most favorable to the opponent of the motion. *Nord v. Herreid*, 305 N.W.2d 337, 339 (Minn.1981). Baker produced affidavits from two law enforcement specialists who indicated Chaplin used inappropriate force which no reasonable police officer would have considered warranted. One characterized Chaplin's blow as deadly force.

The Minneapolis Police Manual provides that deadly force may be used by officers "only when necessary to protect themselves or others from apparent death or great bodily harm." Likewise, it is well settled that use of deadly force to prevent the escape of all felony suspects is constitutionally unreasonable. *Tennessee v. Garner*, 471 U.S. 1, 11, 105 S.Ct. 1694, 1701, 85 L.Ed.2d 1 (1985). When the suspect poses no immediate threat to the officer or others, "the harm resulting from failing to apprehend him does not justify the use of deadly force." *Id.* Similarly, under Minnesota law, police officers are authorized to use deadly force only to protect police or another from apparent death or great bodily harm. Minn.Stat. § 609.-066, subd. 2 (1990). Deadly force is also justified to arrest a person a police officer reasonably believes has committed or is about to commit a felony involving the use of deadly force. *Id.*

■ We conclude it is abundantly clear that, under the circumstances, the use of deadly force against Baker would be unlawful and violative of the Fourth Amendment. Baker's behavior was not a threat to the police, the President, or others. She did not try to enter the secured area or cross the police line. She simply moved back pursuant to police instruction and then stood quietly. We conclude that no reasonable, competent police officer could have believed that deadly force was justified in this situation.

■ The WCCO video, the police training materials, Baker's affidavit, and the affidavits of the law enforcement experts create genuine issues for trial. Accordingly, the trial court correctly denied Chaplin's summary judgment motion asserting qualified immunity as a matter of federal law.

## II

■ Under Minnesota law, a public official is entitled to official immunity from state law claims when that official's duties require the exercise of judgment or discretion. *Johnson v. Morris*, 453 N.W.2d 31, 41 (Minn.1990). Generally, police officers are considered discretionary officers entitled to that immunity. *Id.* at 42. Minnesota's doctrine of official immunity, however, does not shield a police officer from suit if the officer commits a willful or malicious wrong. *Rico v. State*, 472 N.W.2d 100, 106–07 (Minn.1991). Malice "means nothing more than the intentional doing of a wrongful act without legal justification or excuse, or, otherwise stated, the willful violation of a known right." *Id.* at 107 (quoting *Carnes v. St. Paul Union Stockyards Co.*, 164 Minn. 457, 462, 205 N.W. 630, 631 (1925)).

■ While the doctrine of official immunity is intended to protect bona fide law enforcement practices, it is not intended to shield police brutality. *Elwood v. Rice County*, 423 N.W.2d 671, 679 (Minn. 1988). Accordingly, liability will attach when a police officer intentionally commits an act which the officer, at the time of the act, has reason to believe is wrong. *See Rico*, 472 N.W.2d at 106–07. Our inquiry,

therefore, is whether a genuine issue of material fact exists as to whether Chaplin's "actions could constitute a willful or malicious wrong." *Id.*

■ Baker has produced sufficient evidence from which a reasonable jury could conclude that Chaplin acted willfully and with malice when he struck Baker with his riot baton. She submitted the WCCO video, which illustrates the circumstances Chaplin confronted, as well as the apparent force of his blow. She also produced relevant sections of the Minneapolis Police Manual, which prohibits police officers from striking people in the chest, over the heart, with riot batons except in those cases where deadly force is justified. Baker further submitted police manual provisions indicating deadly force was not justified in this situation. Finally, Baker submitted the affidavits of two law enforcement specialists which indicate that no reasonably well-trained police officer would have believed there was a need to strike her with the degree of force used by Chaplin.

We conclude Baker has produced facts which, if true, could allow a jury to conclude Chaplin acted willfully and with malice when he hit her. Consequently, the trial court correctly denied the summary judgment motion.

## DECISION

Baker submitted sufficient evidence to create genuine issues for trial on whether appellant Chaplin's conduct violated her Fourth Amendment rights and constituted an intentional doing of a wrongful act without legal justification. Consequently, the trial court properly denied Chaplin's summary judgment motion in which he asserted immunity from suit under both qualified and official immunity doctrines.

Affirmed.