Ralph LARSON, Appellant,

v.

Rodney W. SANDO, Commissioner
of DNR, et al., Respondents.

No. CX–93–488.

Court of Appeals of Minnesota.

Nov. 9, 1993.

Review Denied Jan. 21, 1994.

Mark Reinhardt, Sara Madsen, Reinhardt and Anderson, St. Paul, Kathryn Fetterly, James Moran, Minneapolis, for appellant.

Hubert H. Humphrey III, Atty. Gen., Scott R. Strand, Asst. Atty. Gen., Carl M. Conney, Asst. Atty. Gen., St. Paul, for respondents.

Considered and decided by CRIPPEN, P.J., and RANDALL and HARTEN, JJ.

## OPINION

RANDALL, Judge.

Appellant Larson sued respondents State of Minnesota, Department of Natural Resources (DNR), and Rodney W. Sando, Commissioner of the DNR, to stop the private sale of land which the DNR currently uses as a state wildlife management area. Respondents were granted summary judgment. Appellant challenges the constitutionality of the enabling legislation and argues the sale is a violation of the "public trust" doctrine. We affirm.

## FACTS

In 1973, the Minnesota Department of Corrections transferred three tracts of land totaling 1102.5 acres of land to the DNR. In 1976, the DNR designated the land as a state wildlife management area. *See* Minn.Stat. §§ 86A.01–.11 (1992) (Minnesota Outdoor Recreation Act). Portions of the tracts have subsequently been transferred or sold. A portion was transferred back to the Department of Corrections for use as the location of the Oak Park Heights Correctional Facility. Later 46.86 acres were sold to the City of

Bayport for use as a public park. *See* 1973 Minn.Laws ch. 424.

In August 1990, Andersen Corporation (Andersen) contacted the DNR regarding sale of 245 acres of the wildlife management area to the corporation. Andersen, a window and building accessories manufacturer, has a plant located nearby. The 245 acres would be used for plant expansion expected in the late 1990's.

Initially, the DNR suggested a land exchange involving other potential wildlife habitat areas. However, during negotiations three small landfill sites were discovered on the property. The DNR then negotiated a straight sale of the land for its appraised value plus other consideration. An independent appraised value of $1,160,000 was acceptable to both parties. In addition, Andersen agreed to pay an 18 percent surcharge for administrative expenses, plus another $600,000 in advance for environmental cleanup costs. The DNR's intent was to use the proceeds of the sale to acquire superior wildlife habitat land in the metropolitan area. A bill authorizing the sale was introduced and passed in the 1992 legislature. 1992 Minn. Laws ch. 502, § 4. The preliminary version of the bill specifically mentioned Andersen as the purchaser of the land; the final version of the bill does not mention a specific purchaser.

Appellant and other nearby landowners objected to the sale. They argue that the land, located just west of the City of Bayport, is used by area residents for outdoor recreational activities, and the sale to a private corporation is an impermissible interference with the outdoor recreational purposes of a wildlife management area.

The record shows Andersen will consider providing a buffer zone and allowing the public to use that zone for recreation.

## ISSUES

1. Does 1992 Minn.Laws ch. 502, § 4 violate the Minnesota Constitution?

2. Does the sale of state land by legislatively authorized private sale violate the public trust doctrine?

## ANALYSIS

### I.

*Special legislation*

■ Upon review of summary judgment, an appellate court must determine whether there are any genuine issues of material fact for trial and whether the trial court erred in its application of the law. *Offerdahl v. University of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988). The facts must be examined in the light most favorable to the nonmoving party. *Nord v. Herreid,* 305 N.W.2d 337, 339 (Minn.1981). Summary judgment is appropriate where material facts are undisputed and compel only one conclusion as a matter of law. *Kaczor v. Murrow,* 354 N.W.2d 524, 525 (Minn. App.1984).

■ Appellant claims that 1992 Minn. Laws ch. 502, § 4 violates the special legislation clause of the Minnesota constitution, a question of law reviewed without deference to the trial court. *See Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984). We first note every law is presumed constitutionally valid. *See* Minn.Stat. § 645.17(3) (1990); *Head v. Special Sch. Dist. No. 1,* 288 Minn. 496, 506, 182 N.W.2d 887, 894 (1970), *cert. denied,* 404 U.S. 886, 92 S.Ct. 196, 30 L.Ed.2d 168 (1971); *State v. Willenbring,* 454 N.W.2d 268, 270 (Minn.App.1990), *pet. for rev. denied* (Minn. May 30, 1990). This presumption of constitutionality must be disproven beyond a reasonable doubt. *State v. Hamm,* 423 N.W.2d 379, 380 (Minn.1988); *Hickman v. Group Health Plan, Inc.,* 396 N.W.2d 10, 13 (Minn.1986).

The enabling legislation authorizes the sale at a specific price and terms. 1992 Minn. Laws ch. 502, § 4 provides:

**PRIVATE SALE OF STATE LAND; WASHINGTON COUNTY.**

Notwithstanding the public sale provisions of Minnesota Statutes, sections 94.09 to 94.16 or any other law to the contrary, the commissioner of natural resources may sell land in Washington county described in this section by private sale to the purchaser. The conveyance shall be in a form

approved by the attorney general. The consideration received for the conveyance shall be the market value of the land of $1,160,000 as established by a state appraisal certified by the commissioner on January 27, 1992, plus an additional 18 percent of an amount equal to the market value less any environmental cleanup funds provided by the purchaser prior to the conveyance, as described in section 5. The consideration and 18 percent additional payment shall be deposited in the state treasury and credited to the wildlife land acquisition account. The basic purchase consideration is appropriated to the commissioner for acquisition of replacement wildlife management area lands in Anoka, Carver, Dakota, Hennepin, Scott, or Washington counties. The 18 percent additional payment is appropriated to the commissioner to cover the commissioner's professional service costs to acquire the replacement lands and the cost of appraisals for the state lands sold to the purchaser. The commissioner shall return any portion of the 18 percent additional payment remaining after acquisition of replacement lands to the purchaser.

The land that may be sold is in the Bayport state wildlife management area and is described as follows: [legal description of the 245 acre tract].

The commissioner may reserve to the state an easement across the above described property for ingress and egress to lands to be retained by the commissioner in [another portion of the wildlife management area].

1992 Minn.Laws ch. 502, § 5 provides:

The commissioner of natural resources may accept, prior to the conveyance, funds from the purchaser for the commissioner to conduct an environmental cleanup of a former disposal site on the land described in section 4. The funds shall be deposited in the state treasury and are appropriated to the commissioner of natural resources for purposes of the environmental cleanup. The amount of funds provided by the purchaser and expended by the commissioner to accomplish the cleanup, up to a maximum of $600,000, shall be deducted from the consideration to be paid by the purchaser.

We agree with the district court that the constitution prohibits special laws in specific areas, but allows general laws in those areas. In addition, the Minnesota Constitution "generally prohibits special legislation when a general law can be made applicable." *In re Tveten*, 402 N.W.2d 551, 558 (Minn.1987). Appellant argues both prohibitions are applicable to this case. Article XII, § 1 of the Minnesota Constitution provides:

*In all cases when a general law can be made applicable, a special law shall not be enacted* except as provided in section 2. Whether a general law could have been made applicable in any case shall be judicially determined without regard to any legislative assertion on that subject. *The legislature shall pass no local or special law* authorizing the laying out, opening, altering, vacating or maintaining of roads, highways, streets or alleys; remitting fines, penalties or forfeitures; changing the names of persons, places, lakes or rivers; authorizing the adoption or legitimation of children; changing the law of descent or succession; conferring rights on minors; declaring any named person of age; giving effect to informal or invalid wills or deeds, or affecting the estates of minors or persons under disability; granting divorces; exempting property from taxation or regulating the rate of interest on money; creating private corporations, or amending, renewing, or extending the charters thereof; *granting to any private corporation, association, or individual any special or exclusive privilege, immunity or franchise whatever* or authorizing public taxation for a private purpose. The inhibitions of local or special laws in this section shall not prevent the passage of general laws on any of the subjects enumerated.

(Emphasis added.)

The district court found the statute's classification of one parcel of land for a legislatively directed sale was proper, and the Minnesota Constitution was not violated. The governmental purposes of the law included economic development, environmental

cleanup, and acquisition of superior wildlife habitat. The court further found the state obviously has authority to manage state lands, and therefore, that the statute does not violate the special legislation clause. We agree.

■ Appellant argues the public auction system under Minn.Stat. §§ 94.09–.16 (1992) is applicable and must be followed in this case. Appellant argues allowing the legislature to sell land privately by statute allows the sale of public land without public scrutiny and without the assurance of the highest price brought through public auction.

First, we note the specific legislation at issue involved public scrutiny. The legislature had public debate and a public vote before passage. Secondly, a public auction would bring the highest price "at that auction." An auction would not necessarily bring a higher price than a privately negotiated sale. The DNR negotiations resulted in the state receiving the appraised value of the land plus a substantial (18 percent) surcharge for administrative costs plus a cash advance of $600,000 for the cleanup of existing landfills. We find no interference with the public's right to expect prudent monetary management from the state and its agencies.

The enabling legislation allows the DNR to sell the land to any purchaser. It is true the legislation presupposed the existence of Andersen as a viable purchaser. However, appellant has not named any other viable purchaser, nor shown any prejudice to any potential but unnamed purchaser.

We also note that state law does not mandate that all state land must always be sold by public auction. For example, after a public hearing, state land may be exchanged for private land without being auctioned. Minn. Stat. § 94.343, subd. 7 (1992). In addition, Minn.Stat. § 94.09 (the public auction statute) *only* applies to land designated by a state department as surplus land. This land had never been designated surplus land. Further, 1992 Minn.Laws ch. 502, § 4 specifically exempted this sale from other applicable statutes. We find Minn.Stat. §§ 94.09–.16 do not apply to this negotiated sale of nonsurplus land.

■■ Further, the constitutional prohibition against special legislation does not prohibit the legislature from creating classes and applying different rules to different classes through general laws. *Tveten*, 402 N.W.2d at 558. The legislature, however, must then adopt proper classifications based upon substantial distinctions. *Id.* It is permissible for the class to have only one member. *See Visina v. Freeman*, 252 Minn. 177, 196–99, 89 N.W.2d 635, 651–52 (1958); *State ex rel. Board of Courthouse & City Hall Com'rs v. Cooley*, 56 Minn. 540, 58 N.W. 150 (1893); *In re Minnesota Indep. Equal Access Corporation's Application*, 477 N.W.2d 516, 521–22 (Minn.App.1991), *pet. for rev. denied* (Minn. Jan. 30, 1992).

■ A classification will meet the constitutional prohibition against special legislation if it meets a rational basis test:

(a) the classification applies to and embraces all who are similarly situated with respect to conditions or wants justifying appropriate legislation; (b) the distinctions are not manifestly arbitrary or fanciful but are genuine and substantial so as to provide a natural and reasonable basis justifying the distinction; and (c) there is an evident connection between the distinctive needs peculiar to the class and the remedy or regulations therefor which the law purports to provide.

*Wichelman v. Messner*, 250 Minn. 88, 118, 83 N.W.2d 800, 824 (1957).

■ 1992 Minn.Laws ch. 502, § 4 is a classification of one member, the described land in the Bayport wildlife management area. This law meets the rational basis test. The land is distinct from other state land. A willing buyer has offered to pay the appraised value, plus a surcharge, plus advance cleanup costs for old landfills. Further, the sale will provide funds for acquisition of other and better wildlife habitat. We note other similar laws have allowed the private sale of state land. 1990 Minn.Laws ch. 452, § 13 authorized the sale of a different part of that same wildlife management area to a school district (though the sale was not completed). *See* 1990 Minn.Laws ch. 452, §§ 6 (sale of wildlife management land to private party,

restricting building but allowing fencing), 7 (to a forest management service), 8, 9 (to private parties for legal access to property), 12 (to a county for use as a park), 14 (resale of tax-forfeited lands to taxpayer).

■ Finally, appellant argues there is a fact issue of whether the statute was intended to allow a private sale only to Andersen. Appellant argues such a sale would show the legislation granted an impermissible special privilege. The trial court found the statute allowed the DNR to sell the land to anyone on the stated terms, and that the fact that Andersen is the likely buyer did not invalidate the statute. We acknowledge that the record shows the sale was negotiated between Andersen and the DNR, and supported by the DNR in the legislature. But, the motives of those who promoted and passed a law, and the manner in which passage was procured, is not relevant to whether the law, as passed, is constitutional. *Jewell v. Weed*, 18 Minn. 272, 18 Gil. 247 (1872); *see also K.E. v. Hoffman*, 452 N.W.2d 509, 514 (Minn.App.1990), *pet. for rev. denied* (Minn. May 7, 1990). We find no disputed material facts. The questions of law are susceptible to appellate review of a summary judgment.

## II.

*Public trust doctrine*

■ Appellant argues that land held under the outdoor recreation statute is held in trust for the public, and therefore this land is dedicated to public use. The trial court found the public trust doctrine applied to the state's management of waterways, not to management of land, and that if the doctrine applied to land, it would prohibit any sale of any state land. We agree.

■ The cases cited by appellant regarding the public trust doctrine all discuss the state's ownership of the waterways, not land. The state owns navigable waters and the lands under them for public use, as trustee for the public, and not as a proprietor with right of alienation. *See Pratt v. State, Dep't of Natural Resources*, 309 N.W.2d 767, 771 (Minn.1981); *Nelson v. De Long*, 213 Minn. 425, 431, 7 N.W.2d 342, 346 (1942). But if the public trust doctrine was strictly applied

to land owned by the state, once the state owned any land, it would never be able to sell.

■ Appellant also argues that land in the outdoor recreation system has been dedicated to "public use" and cannot be used or sold for any other purpose. We disagree. Dedication occurs when land is transferred by a private party to a governmental entity for a particular purpose. *See City of Zumbrota v. Strafford Western Emigration Co.*, 290 N.W.2d 621, 622–23 (Minn.1980); *Headley v. City of Northfield*, 227 Minn. 458, 463, 35 N.W.2d 606, 609 (1949). Once land is formally dedicated, the government does not own the land in fee simple with right of alienation, but in trust for a specific use. Thus, appellant argues the transfer of state land from the Department of Corrections to the DNR for a public purpose, use as a wildlife management area, "dedicated" the land for wildlife management. We disagree. We hold transfers between state departments do not create "dedications." The state has the right to manage its land by freely transferring land between departments without creating binding dedications of land in the process. Further, the outdoor recreation statute is general, and does not specify which state land must be used to fulfill its purpose.

We conclude the State of Minnesota owns the Bayport wildlife management area in fee simple, with no transfer restrictions, and can sell it. This sale of land to a private party did not violate the public trust doctrine.

## DECISION

1992 Minn.Laws ch. 502, § 4 does not violate the Minnesota Constitution. The sale of a part of the Bayport wildlife management area by legislatively authorized private sale did not violate the public trust doctrine.

**Affirmed.**